713 F.2d 972
 113 L.R.R.M. (BNA) 3639, 98 Lab.Cas. P 10,351
 PAWLAK, John A. and Stafford, James,
v.
GREENAWALT, Charles E., Local Union No. 764, Teamsters,
Chauffeurs, Warehousemen, and Helpers, Teamsters Joint
Council No. 53 and International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers.
Appeal of Charles E. GREENAWALT and Teamsters Local 764.
Appellants in No. 82-3350.
Appeal of INTERNATIONAL BROTHERHOOD OF TEAMSTERS. Appellant
 in No. 82-3552.
 Nos. 82-3350, 82-3352.
 United States Court of Appeals,
Third Circuit.
 Argued March 7, 1983.
Decided July 29, 1983.
 
 Ira H. Weinstock, Paul J. Dellasga (argued), Ira H. Weinstock, P.C., Harrisburg, Pa., for appellants Charles E. Greenawalt and Teamsters Local No. 764.
 Paul Alan Levy (argued), Alan B. Morrison, Arthur J. Fox, II, Public Citizen Litigation Group, Washington, D.C., for appellees John A. Pawlak and James Stafford.
 Robert M. Baptiste (argued), Gary S. Witlen, Charles S. DeAngelo, Washington, D.C., John J. Dunn, Sr., Scranton, Pa., for appellant Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.
 Before SEITZ, Chief Judge, and HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This case involves the district court's award of attorneys' fees and costs to union members who filed an action to redress their rights under Title I of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401-531. We are asked to decide whether the district court abused its discretion in awarding attorneys' fees and whether it erred in determining the amount awarded. We will affirm in part and remand in part.
 
 I.
 
 2
 In 1976 John A. Pawlak brought an action against his Union, Local 764 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 764), seeking equitable relief and damages under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, for an alleged breach of its duty of fair representation. Pawlak v. Intern. Broth. of Teamsters, Etc., 444 F.Supp. 807, aff'd mem., 571 F.2d 572 (3d Cir.1978). The district court dismissed Pawlak's action because he failed to exhaust the Union's internal grievance and arbitration procedures as required by Section 301 of LMRA. Id. at 812. Relying on Article XIX, § 12(b) of the Union's Constitution which authorizes the Union to recover all costs and expenses it incurs in successfully defending an action brought by one of its members who failed to exhaust internal Union remedies, the Executive Board of Local 764 assessed Pawlak $2,635 in legal expenses.
 
 
 3
 In January 1978, Pawlak, James A. Stafford and other members of Local 764 proposed amendments to the Union's bylaws. Prior to the April 1978 vote on the proposed amendments, Local President Greenawalt sent a letter to the local rank and file advising the members to reject the proposed amendments. Pawlak and Stafford then requested access to the membership list and union funds to finance a counter-mailing in support of the amendments. The Executive Board refused both requests.
 
 
 4
 Pawlak and Stafford filed this second action in October 1978 against Local 764, Greenawalt as President of Local 764, the Teamster's Joint Council No. 53[1] and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (International). The first of the two-count complaint alleged that the defendants violated LMRDA, 29 U.S.C. § 411(a)(4), by fining Pawlak $2,635 to recover the expenses Local 764 incurred in defending against his 1976 action. Joint Appendix (J.A.) at 121-24. The second count alleged that Joint Council No. 53, Local 764 and Greenawalt denied Pawlak's and Stafford's right to express their views and to participate in the 1978 bylaw referendum in violation of 29 U.S.C. §§ 411(a)(1) and (a)(2) and 501. J.A. at 124-27. Local 764 counterclaimed against Pawlak for the $2,635 in legal fees it had assessed against him. After Council No. 53 was dismissed from the action, the remaining parties moved for summary judgment.
 
 
 5
 The district court granted plaintiffs' motion for summary judgment. Pawlak v. Greenawalt, 477 F.Supp. 149 (M.D.Pa.1979), aff'd, 628 F.2d 826 (3d Cir.1980), cert. denied, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). The court declared that Article XIX, § 12(b) of the Union's Constitution violated 29 U.S.C. § 411(a)(4) because it limited the Union member's right to sue. 477 F.Supp. at 151. The court therefore enjoined defendants from enforcing Article XIX, § 12(b) and from collecting the fine imposed upon Pawlak. Id. It also granted plaintiffs' request for an additional order directing the International to publicize this order in its monthly magazine. Id.
 
 
 6
 Count two was resolved in 1979 by a consent order. J.A. at 164-66. Plaintiffs waived their claim for damages, but they were granted equal access to union resources to promote bylaw proposals in 1980. Id. at 165. If the Union sent a mailing to rank-and-file members at Union expense, it was required to afford plaintiffs the opportunity at Union expense to insert a letter in the mailing in support of their proposed bylaw amendments. Id.
 
 
 7
 After the district court's judgment was affirmed and the Supreme Court denied certiorari, plaintiffs filed an application for attorneys' fees and costs. They asked for $33,844.35 in attorneys' fees and $1,578.66 in costs for the original action. Id. at 3. However, the parties to count two entered into a settlement agreement that relieved Greenawalt of all liability for attorneys' fees, that relieved Local 764 of all liability for attorneys' fees related to count one, that fixed the amount of fees to be awarded in regard to count two at $4,000 and which limited the issues to be decided by the court with respect to this count to two: whether plaintiffs were the prevailing parties on count two and whether the litigation with respect to count two created a substantial common benefit for the members of Local 764. Id. at 349-54. The agreement also stipulated the record upon which these issues were to be decided.
 
 
 8
 Consequently, the fee application is divisible as to the two counts. Plaintiffs seek an award as to count one from the International. They seek an award as to count two from Local 764 and Charles Greenawalt. They also asked for fees and costs for work on the fee application. Id. at 3.
 
 II.
 
 9
 Title I of LMRDA contains no provision for an award of attorneys' fees. However, the Supreme Court recognized a decade ago in Hall v. Cole, 412 U.S. 1, 7-9, 93 S.Ct. 1943, 1947-48, 36 L.Ed.2d 702 (1973),[2] that reimbursement of the successful plaintiff's attorneys' fees in an action to vindicate rights under Title I of LMRDA is authorized under the common benefit doctrine affirmed in Mills v. Electric Auto-Lite, 396 U.S. 375, 393-97, 90 S.Ct. 616, 626-28, 24 L.Ed.2d 593 (1970). This doctrine applies when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' " Hall v. Cole, 412 U.S. at 5, 93 S.Ct. at 1946, quoting Mills v. Electric Auto-Lite, 396 U.S. at 393-94, 90 S.Ct. at 626.
 
 
 10
 The Court explained how LMRDA cases could come within the common benefit doctrine. Noting that Title I of LMRDA "was specifically designed to promote the 'full and active participation by the rank and file in the affairs of the union,' " Hall v. Cole, 412 U.S. at 7-8, 93 S.Ct. at 1947, quoting American Federation of Musicians of the United States and Canada v. Wittstein, 379 U.S. 171, 182-83, 85 S.Ct. 300, 306-07, 13 L.Ed.2d 214 (1964), the Court concluded that a member's vindication of his own right of participation in union affairs "necessarily rendered a substantial service to his union as an institution and to all its members." Hall v. Cole, 412 U.S. at 8, 93 S.Ct. at 1947. The Court also explained that the award of attorneys' fees would be paid out of the union treasury and thus shifted the cost of the litigation to the class benefited by it. The Court held, therefore, "that an award of counsel fees to a successful plaintiff in an action under § 102 of the LMRDA falls squarely within the traditional equitable power of federal courts to award such fees ...." Id. at 9, 93 S.Ct. at 1948.
 
 
 11
 With the exception of local counsel Bruce F. Bratton, plaintiffs' attorneys in this case are employed by a public interest organization, Public Citizen Litigation Group, an arm of Public Citizen, Inc. which is an umbrella organization engaging in a wide variety of public interest activity. J.A. at 3, 31. Public Citizen, Inc. provides the funding for Public Citizen Litigation Group, and it also pays the expenses incurred by attorneys employed by Public Citizen Litigation Group. Because they are salaried employees, plaintiffs' attorneys will not directly receive the attorneys' fees awarded in this case; the award will be turned over to Public Citizen, Inc. Id. at 3-4, 32.
 
 
 12
 The district court referred the application to a magistrate for a report and recommendation. The magistrate recommended that the fee application be denied in its entirety because plaintiffs' counsel failed to keep adequate time records and to make proper allocations among the two claims and the various parties, id. at 85, and because the settlement agreement produced no substantial common benefit. Id. at 85-86. In the alternative for count one, the magistrate recommended an award for fees at a reduced hourly rate in the amount of $10,287.50 and costs of $1,036.59 reduced by 25% to $7,815.61 and $744.77 because of plaintiffs' counsels' failure to keep adequate records and to make proper allocations among claims and parties. Id. at 85. In the alternative for count two, he recommended an award of fees and costs of $4,000 against Local 764 alone. The magistrate recommended that under no circumstances should fees and costs be awarded for the work performed on the fee application. Id.
 
 
 13
 Based upon a de novo review of the record pursuant to 28 U.S.C. § 636(b)(1), the district court rejected the magistrate's recommendations. J.A. at 4. The court reviewed the recommendations as to each count separately. It found that the resolution of count one "unquestionably conferred upon all of the membership of International at the very least the benefit of removing a chill cast upon the rights of all union members to institute court actions in order to vindicate their rights." Id. at 7. It also found that the cost of the award would be borne by the Union members who were benefited by the action. Relying on Hall v. Cole, supra, the district court concluded that plaintiffs met the threshold requirements of Title I of LMRDA, 29 U.S.C. § 412 for an award of attorneys' fees. The court also found that the time "records kept by counsel Levy and Fox are adequate in most respects to support the award of fees for the time reflected in those records and that the time is also adequately allocated by counsel between the counts." J.A. at 9. However, it did deny an award for the time submitted by counsel Bratton, Sims[3] and Morrison because they failed to keep any time records. Id.
 
 
 14
 The court also rejected the magistrate's recommendation denying the request for fees for time spent on the fee application. Characterizing plaintiffs' action as a vindication of "the civil rights of union members," id. at 10, the district court awarded fees for the time spent on the fee application. Id. Moreover, it concluded
 
 
 15
 that the [requested] hourly rates for Levy and Fox are reasonable rates for attorneys similarly situated geographically and in terms of experience, education, and quality of the work performed.
 
 Id. at 11. These rates are as follows:
 
 16
 Levy (Pre-January 1980) $65.00
Levy (post-January 1980) 75.00
Fox 90.00
 
 
 17
 The court thus calculated the amount of the award by multiplying the hours submitted by Levy and Fox by the rates requested:
 
 
 18
 Hours Rate
 ------ ------
Levy (Pre-January 1, 1980) 116.25 $65.00 $ 7,556.25
Levy (Post-January 1, 1980) 245.00 75.00 18,375.00
Fox 62.00 90.00 $ 5,625.00
 ----------
 TOTAL $31,556.25
 
 
 19
 Id. at 12. However, it denied plaintiffs' request to increase the fee to reflect its contingent nature or to reflect the quality of counsel's work. Id. at 12-13. Finally, it awarded costs of $1,036.59 to reimburse counsel for amounts expended on matters relating to count one. Id. at 14.
 
 
 20
 The court similarly rejected the magistrate's recommendation concerning count two. It found that plaintiffs were the prevailing parties because the settlement agreement embraced the relief they sought. Id. at 16. It also found that in requiring Union officers to "give union members 'equal time' to express their views at union expense," id. at 15 (emphasis in original), the settlement agreement conferred a significant common benefit upon plaintiffs and all Union members. Id. at 15-16. It therefore awarded attorneys' fees for count two as prescribed by the settlement agreement. Id. at 15-16.
 
 
 21
 The district court later amended its award of $32,592.84 in fees and costs to $38,338.84. Id. at 18-25. The court acknowledged that it erred in concluding that counsel Sims failed to keep time records. The record shows that Sims kept time records from August 8, 1981 forward. Id. at 22. The court therefore granted Sims' request for counsel fees of $3,013.60 computed at the rate of $80.00 per hour. Id. at 23. The court also awarded an additional $3,525.00 for time spent by counsel Levy in regard to plaintiffs' exceptions to the magistrate's report concerning count one. Id. at 22-24. The court thus awarded a total of $38,338.84 in attorneys' fees and costs.
 
 
 22
 The named defendants now appeal from the district court's orders. We are asked to decide if the district court abused its discretion in awarding attorneys' fees and costs to the named plaintiffs with respect to the underlying action. We are also asked to determine if the district court erred in awarding attorneys' fees and costs for the work performed on the application for fees and costs.
 
 III.
 
 23
 The standard of review of a district court's award of attorneys' fees was enunciated by this court in Lindy Bros. Bldrs., Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 166 (3d Cir.1973) (Lindy I ) and affirmed in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115-116 (3d Cir.1976) (Lindy II ). The court held in Lindy I:
 
 
 24
 In awarding attorneys' fees, the district judge is empowered to exercise his informed discretion, and any successful challenge to his determination must show that the judge abused that discretion ... failure to adhere to proper standards and to follow appropriate procedures would constitute abuse of the district court's discretion to award attorneys' fees.
 
 
 25
 Lindy I, 487 F.2d at 166. In Lindy II, we declared that " 'if the district court has applied the correct criteria to the facts of the case, then, it is fair to say that we will ordinarily defer to its exercise of discretion.' " Lindy II, 540 F.2d at 116, quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 756 (3d Cir.) (in banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). The proper standards and appropriate procedures to be followed by the district court in determining the amount of fees to be awarded were articulated in Lindy I: the number of hours spent on the litigation; the nature of the services involved; the value of the attorneys' time based on a reasonable hourly rate; the contingent nature of success in the litigation; and "the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled." 487 F.2d at 168. The following factors are to be considered in evaluating the quality of the attorneys' work: "the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of the recovery obtained." Id. These standards and procedures are summarized in Lindy II, 540 F.2d at 108.
 
 
 26
 The district court "applied the correct criteria to the facts of the case." Lindy II, 540 F.2d at 116. Therefore, we may reverse the lower court only if we find that its decision was "irrational," id. at 115, or was based upon an erroneous finding of fact. Id. at 116. Appellants contend that the court's findings of fact were clearly erroneous because the time records lacked sufficient detail to provide the bases for a judicial determination of the exact time spent, the specific nature of the services used, or of an allocation of time between the counts and among the various parties.
 
 
 27
 On some of these issues, however, appellants demand a degree of detail in the time records that is not required by law. We have said that in determining the time spent and the nature of legal services employed "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted ...." Lindy I, 487 F.2d at 167. Yet we do require "some fairly definite information as to the hours devoted to various general activities ...." Id. This requirement of specificity is intended to permit the district court to determine if the hours claimed are reasonable for the work performed.
 
 
 28
 The court's focus in assessing the adequacy of submitted documentation, then, is whether the documentation permits the court to determine if the claimed fees are reasonable. This point was recently emphasized by the Court of Appeals for the District of Columbia in reversing a district court's denial of attorneys' fees for lack of adequate documentation. Jordan v. United States Dep't of Justice, 691 F.2d 514 (D.C.Cir.1982). That court declared:
 
 
 29
 Total denial of requested fees as a purely prophylactic measure, however, is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith.
 
 
 30
 Id. at 518. (Footnotes omitted.) Although Jordan involved a fee application by a successful litigant under the Freedom of Information Act, 5 U.S.C. § 552, its principle is similarly applicable in a case such as the one before us where a fee application is considered under the court's equitable power.
 
 
 31
 On the basis of the record before us, we cannot say that the district court abused its discretion in its award of attorneys' fees. The time records that served as the bases of the reconstructed time summaries admittedly were not exemplary, see J.A. Vol. III. Still, our review of them leads us to conclude that the district court was not clearly erroneous or irrational in finding that these records were "adequate in most respects to support the award of fees for the time reflected in those records." J.A. at 9.
 
 
 32
 International challenges the district court's allocation to it alone of all of the time spent on count one and its allocation of unspecified time equally to each count. These allocations were the product of the settlement reached between appellees Pawlak and Stafford and appellants Greenawalt and Local 764. See infra at 5. International was not a party to this agreement.
 
 
 33
 International argues that it should not be held liable for attorneys' fees relating to count one. It claims it was not a party to the litigation that gave rise to Pawlak's claim for attorneys' fees as to that count.
 
 
 34
 This assertion is incorrect. Not only was the International a named defendant in the earlier actions, it actively participated in them and its counsel wrote all of the briefs on appeal. Pawlak v. Intern. Broth. of Teamsters, Etc., 444 F.Supp. at 809; Pawlak v. Greenawalt, 477 F.Supp. at 150; J.A. at 104. Judgments in these earlier actions and on appeal were entered against International as they were against the other defendants. Moreover, Local 764 and Greenawalt were agents of International and acted under authority of the International's constitution. International cannot validly show that it was not a party to the litigation that gave rise to Pawlak's petition for attorneys' fees.
 
 
 35
 Nevertheless, this Court has held that, in certain attorneys' fees petitions involving various defendants, the district court must allocate among them the time chargeable to each defendant. Baughman v. Wilson Freight Forwarding Company, 583 F.2d 1208, 1214 (3d Cir.1978). In Baughman we declared:
 
 
 36
 We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle or who are found not to be liable.
 
 
 37
 Id. The same case also holds that the hours chargeable to the claims against other defendants are chargeable to a specific defendant if "plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim against" that specific defendant. Id. at 1215.
 
 
 38
 In addition, we have also rejected the simple allocation of liability for attorneys' fees as a percentage among claims. In Hughes v. Repko, 578 F.2d 483, 486 (3d Cir.1978), we set aside a district court's judgment which reduced by two-thirds the lodestar it awarded to plaintiffs who prevailed on only one of the three counts of their complaint. The district court erred in determining the attorneys' fee award without having made a finding as to the time spent on the claim on which plaintiffs prevailed. We noted
 
 
 39
 that there is no necessary relationship between the number of claims and contentions presented in a lawsuit and the lawyer time spent on each. Consequently, the approach adopted by the district court does not have a rational basis to commend it.
 
 
 40
 Id. We held that the district court's automatic reduction of the lodestar by two-thirds was legally impermissible.
 
 
 41
 The district court failed to allocate time spent by appellants' counsel as required by Baughman and Repko. Therefore, the district court erred in allocating all of the time spent on count one to International and in allocating unspecified time equally to each count. On remand the district court should determine the number of attorney hours attributable to each count. Of the time allocable to count one, the district court should determine the number of hours chargeable to International. We emphasize that Pawlak bears the burden of proving the number of hours allocable to count one and chargeable to International.
 
 
 42
 Appellants also challenge the hourly rates that the district court determined were the proper rates to be applied to the hours worked in computing the lodestar. They claim that the court's determination was based on the undocumented assertions of appellees' counsel concerning the hourly rates prevailing in the community. They insist that these assertions were insufficient bases upon which a determination could be made. The district court, however, found that the rates submitted by appellants' counsel were "reasonable rates for attorneys similarly situated geographically and in terms of experience, education, and quality of the work performed." Id. at 11.
 
 
 43
 This court has determined that the value of an attorney's services is generally measured by his billing rate. Lindy I, 487 F.2d at 167. When an attorney is salaried, as are plaintiffs' attorneys, and does not have an hourly billing rate, this court has held that, "[t]o the extent salary levels are relevant [to the determination of reasonable attorneys' fees], the appropriate referent would be comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation." Rodriguez v. Taylor, 569 F.2d 1231, 1248 (3d Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).
 
 
 44
 The district court was thus obliged "to determine the reasonable hourly rate 'prevailing in the community for similar work.' " National Ass'n of Concerned Veterans. v. Secretary of Defense, 675 F.2d 1319, 1324 (D.C.Cir.1982), quoting Copeland v. Marshall, 641 F.2d 880, 892 (D.C.Cir.1980) (in banc). In making this determination, the court was required to consider such factors as the expertise, experience, position and reputation of the attorneys involved. Baughman v. Wilson Freight Forwarding Co., 583 F.2d at 1216-17. The district court considered these factors in addition to counsels' education and the quality of counsels' work in making its determination. J.A. at 11. It based its determination on its "consideration of the undisputed facts of record in this matter together with the testimony given by [p]laintiffs' counsel and their affidavits submitted in support of the application for attorneys' fees." Id. at 11. Because the record supports the district court's determination, we find that it was not clearly erroneous in its determination that the requested rates are reasonable hourly rates prevailing in the community for similar work. National Ass'n of Concerned Veterans v. Secretary of Defense, supra.
 
 IV.
 
 45
 As to count two, we hold that appellees were the prevailing parties and that their settlement conferred a substantial common benefit on Union members.
 
 
 46
 We find that the Consent Order contributed to a fair process in bylaws referenda. Its impact transcends the 1980 election, for it now stands as a precedent for subsequent bylaw referenda. Therefore, the benefit exists even though appellees' 1980 bylaws proposals were defeated, and even though they were unable to use a Union-financed mailing of their views because Union officers decided not to send a mailing prior to the 1980 election. We view the Consent Order as a vindication of appellees' right to free speech guaranteed by Title I of LMRDA which "necessarily rendered a substantial service to [their] union as an institution and to all of its members." Hall v. Cole, 412 U.S. at 8, 93 S.Ct. at 1947.
 
 
 47
 Appellants also argue that the Consent Order was personal because appellees were motivated by their desire for elective office, and the Consent Order improperly would have advanced their election goals. They insist that this motivation should preclude a judicial finding that their action conferred a substantial common benefit upon Union members.
 
 
 48
 The Supreme Court rejected a similar objection to an award of attorneys' fees. In Hall v. Cole, supra, a union claimed that a union member's application for attorneys' fees should be denied because he was motivated in bringing an action to vindicate his right to free speech under Title I, LMRDA, in part, by his desire to gain elective office. The Supreme Court rejected the union's theory. It held that "Title I of the LMRDA was specifically designed to protect the union member's right to seek higher office within the union...." Id. at 14, 93 S.Ct. at 1950. It therefore granted attorneys' fees notwithstanding the personal election goals of the union member "because the litigation confers substantial benefits on an ascertainable class of beneficiaries." Id. at 15, 93 S.Ct. at 1951.
 
 
 49
 In this case, as in Hall v. Cole, supra, a substantial benefit was conferred upon Union members. In vindicating their rights of freedom of speech and of full and active participation in Union affairs, appellees in this case, as the respondent in Hall v. Cole, dispelled the "chill" cast upon the rights of all Union members and contributed to the preservation of union democracy. The Supreme Court held that those achievements, notwithstanding personal political motivations, "necessarily rendered a substantial service to [their] union as an institution and to all its members." Id. at 8, 93 S.Ct. at 1947. Consequently, the substantial benefit this litigation conferred upon Union members by vindicating their civil rights under Title I of LMRDA is not negated by appellees' desire for elective office. Rather, they are mutually beneficial. Their personal ambitions in bringing the action in no way impedes the court from granting appellees' petition for attorneys' fees for work performed on count two. Finding that appellees were prevailing parties in count two and that the Consent Order conferred a substantial benefit on Union members, we will affirm the district court's award of attorneys' fees for the underlying litigation.
 
 V.
 
 50
 The final issue before us is one of first impression. We are asked whether the district court erred as a matter of law in awarding attorneys' fees for work performed on the application for attorneys' fees in this nonstatutory common benefit action. We conclude that the district court did not err.
 
 
 51
 Appellants argue that in nonstatutory common benefit actions fee awards are not permitted for time spent litigating the fee application. Their rationale relies on the common fund doctrine, which appellants claim is an identical doctrine, in which the successful plaintiff may recover only attorneys' fees and costs incurred in creating, preserving or increasing the common fund. For the reasons stated below, we reject this rationale and hold that common benefit actions brought to vindicate civil rights conferred by Title I of LMRDA are distinguishable from common fund actions.
 
 
 52
 Under the common fund theory, fees and costs may be awarded to a party who creates, preserves or protects a fund or property for the benefit of others in addition to himself. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The fees and costs are paid out of the fund or property because the party seeking compensation benefited others who otherwise would unfairly enjoy the benefit without having shared the cost of acquiring the benefit. To avoid such unfairness, courts permit the costs to be shared by the class of individuals benefited by the action. Id.
 
 
 53
 Attorneys' fees and costs are not awarded for time spent on the fee application in common fund cases because the common fund or property is not benefited thereby. This court has held that the action for "attorneys' fees under the equitable fund doctrine belongs to the attorney." Lindy I, 487 F.2d at 165. The action benefits the attorney but not the fund because it does "not create, increase, protect or preserve it," Lindy II, 540 F.2d at 111; rather, it would actually deplete the fund and, therefore, the benefit to plaintiff and the benefited class of individuals because the award would be paid out of the fund. We have therefore denied the award of fees and costs for time spent litigating a fee application under the common fund doctrine because the attorneys' interests in the fee application litigation are in conflict with those of the individuals benefited by the common fund. Id. The rationale supporting the award of attorneys' fees for the underlying litigation thus precludes an award of fees for the fee application in common fund actions.
 
 
 54
 The United States District Court for the District of Delaware recently applied this rationale in denying fees and costs for a fee application in a common benefit doctrine action. Colpo v. General Teamsters Local Union 326 of the International Brotherhood of Teamsters, 531 F.Supp. 573 (D.Del.1982). The litigation was brought by a union member against his union claiming that the union wrongly disqualified him as a candidate for president of his local because he was delinquent in dues payment. The court found that the union violated the voting and candidacy rights of the union members under 29 U.S.C. § 481(e).
 
 
 55
 The district court awarded petitioner counsel fees for work performed on the litigation, but denied counsel's request for attorneys' fees for work performed on the fee application. Id. at 577. The district court reasoned that the plaintiff
 
 
 56
 is entitled to collect fees from the treasury of Local 326 only to prevent unjust enrichment of the Local's membership which has enjoyed a legal victory at [plaintiff's] expense.
 
 
 57
 Id. The court asserted that "[i]n such 'benefit' conferred cases, the Third Circuit has denied recovery for time spent in litigating a fee application." Id., citing Lindy II, 540 F.2d at 111. The district court declared:
 
 
 58
 The theory is that while counsel's efforts in securing a judgment conferred a benefit on the group who should share the expense of securing it, once the merits are resolved, the group receives no additional benefits from the attorney's effort to secure a counsel fee award. Indeed, at that point, "the attorney's interest becomes adverse to the interest of the class which he represents."
 
 
 59
 Id., quoting Prandini v. National Tea Co., 585 F.2d 47, 53 (3d Cir.1978). The district court thus applied the common fund theory to the common benefit theory in denying attorneys' fees for the time spent on the fee application.
 
 
 60
 Another district court reached the opposite result under a different rationale in an earlier case. Cole v. Hall, 376 F.Supp. 460 (E.D.N.Y.1974). Successful plaintiffs in the seminal LMRDA attorneys' fee case, Hall v. Cole, supra, brought an action for supplementary attorneys' fees for services, inter alia, rendered in preparing the appeal to the Supreme Court pursuant to the application for attorneys' fees. The district court granted attorneys' fees for time spent litigating the fee application with the following rationale:
 
 
 61
 The rights of union members granted under Title I of the LMRDA would be valueless without the means to vindicate them. The services rendered by plaintiff's counsel established the right of union members to reasonable counsel fees in prosecution of claims protecting their Title I rights. In essence, plaintiff's counsel served as a private attorney general. The challenge to his fee is a matter of public concern and it is in the public interest that he be compensated for the services rendered in the protection of his fee.
 
 
 62
 Cole v. Hall, 376 F.Supp. at 462. (Footnote omitted.)
 
 
 63
 That district court implicitly distinguished the common fund and the common benefit theories. The justification for the award of attorneys' fees in that common benefit action arose from the protection afforded to the union members' civil rights under Title I of LMRDA. There was no fund granted or preserved by the litigation out of which the attorneys' fees were to be paid. Therefore, the award of attorneys' fees for the time spent in litigating the fee application did not present the conflict of interest between the attorney's action for fees and the individuals benefited by the original litigation. Rather, compensating the attorney for the time spent in litigating his fee, as the court noted, serves the public interest and the interests of the union members whose Title I rights were vindicated.
 
 
 64
 Ironically, the theory of Cole v. Hall, supra, finds support in the case relied on as authority in Colpo v. General Teamsters Local 326 of the International Brotherhood of Teamsters, supra, namely, Prandini v. National Tea Co., supra. In Prandini, plaintiffs were successful in bringing a Title VII class action based on sex discrimination in employment. Attorneys' fees were awarded under 42 U.S.C. § 2000e-5. Distinguishing Prandini from equitable common fund cases such as Lindy II, supra, this court awarded plaintiff's counsel fees for time spent litigating the fee application.
 
 
 65
 In Prandini, we distinguished actions to vindicate statutorily conferred rights from equitable common fund actions. We distinguished them on two grounds. First, the attorneys' fee award in Prandini was authorized by the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988. The second ground is more important to the instant case because of the theory under which the court awarded fees for the fee application. We said:
 
 
 66
 Here, the attorneys' fees do not come out of, nor do they reduce, the plaintiffs' recovery. Hence, the award in this case is unlike a common fund award, which does reduce the plaintiffs' recovery.
 
 
 67
 Prandini v. National Tea Co., 585 F.2d at 53; accord, Bond v. Stanton, 630 F.2d 1231, 1235 (7th Cir.1980); Gagne v. Maher, 594 F.2d 336, 343-44 (2d Cir.1979), aff'd 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Johnson v. State of Mississippi, 606 F.2d 635, 637-39 (5th Cir.1979); Weisenberger v. Heucker, 593 F.2d 49, 53-54 (6th Cir.1979), cert. denied, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); Souza v. Southworth, 564 F.2d 609, 614 (1st Cir.1977). Similarly, in a common benefit action in which the benefit is the vindication of statutorily-conferred rights and not a fund that would be depleted by an award of attorneys' fees, the conflict of interest between the attorney and the class which he represents that precludes compensation for time spent in litigating the fee application in a common fund action is not present. The creation or preservation of a fund is not the justification for the fee award; rather, as in a Title VII action it is the vindication of the class' statutory rights that is the common benefit conferred on the class that justifies an award of attorneys' fees. Moreover, the plaintiffs' recovery is not depleted because the damages award is not the source of payment of counsels' fees. Rather, it is the defendants' treasury that is depleted. Thus, a common benefit action is distinguishable from a common fund action because any fees not awarded to counsel
 
 
 68
 will not be paid to the plaintiffs to augment their settlement fund, as is the case in the normal common fund situation. See Lindy II. Rather, any such excess will be returned to the defendant National.... It is this fact which ultimately makes this case distinguishable from Lindy II, and requires a different result.
 
 
 69
 Prandini v. National Tea Co., 585 F.2d at 53. (Footnote omitted.)
 
 
 70
 This theory was recently adopted by the Eighth Circuit in awarding fees for time spent on the fee application in a common fund type class action for securities fraud. Jorstad v. IDS Realty Trust, 643 F.2d 1305, 1314-15 (8th Cir.1981). The parties reached a settlement agreement that provided for an award of attorneys' fees, none of which would be deducted from the class' recovery. Focusing on the benefit conferred upon the class and noting that attorneys' fees would not be deducted from the plaintiff class' recovery, the court relied on Prandini in awarding fees for time so spent on the fee application. Such awards are justified, the court declared, "because 'the fees are not paid out of the plaintiffs' recovery,' and thus do not diminish their benefits." Jorstad v. IDS Realty Trust, 643 F.2d at 1314, quoting Prandini v. National Tea Co., 585 F.2d at 52-53.
 
 
 71
 The same considerations are present in the instant case. As in Prandini and cases involving statutorily authorized fees for actions vindicating statutorily conferred civil rights, the fees in this case "are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs." Prandini v. National Tea Co., 585 F.2d at 53. We conclude that this case is analogous to one involving a statutorily authorized attorneys' fee award. Therefore, in this case, as in Prandini,
 
 
 72
 the considerations of Lindy II and the equitable fund cases do not apply .... Hence, the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award.
 
 
 73
 Id.
 
 
 74
 We noted in Prandini an important policy consideration for this result: if attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly. Attorneys "may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized." Id.
 
 
 75
 This policy consideration was influential in our recent denial of attorneys' fees for time spent preparing an attorneys' fee application. Shadis v. Beal, 703 F.2d 71 (3d Cir.1983). In Shadis, an attorney retained the services of a law firm to litigate her petition for attorneys' fees under the Civil Rights Attorneys' Fees Award Act. Although we granted attorneys' fees to the law firm for the time it spent litigating the attorney's application for attorneys' fees on the underlying civil rights action, we denied attorneys' fees to the law firm for the time it spent in preparing its own fee application. We reached this result by applying the principles of Prandini:
 
 
 76
 Since under Prandini [the attorney] would have been entitled to reasonable fees for preparing her own fee petition, the [law firm] should be recompensed for the effort they made in her stead. To hold otherwise would be effectively to deny such fees to a prevailing attorney if, for some extraordinary reason, the attorney is unable to prosecute her own fee application.
 
 
 77
 Id. at 73. Thus, we concluded that the policy of the Civil Rights Attorneys' Fees Awards Act, to encourage attorneys to vindicate civil rights and Congressional policies, would "be furthered by granting the [law] firm its fees only to the extent that it stands in [the attorney's] shoes." Id.
 
 
 78
 The instant case does not present the additional legal expenses caused by original counsel hiring her own attorney to litigate her fee application. Here, we are presented only with the original attorneys' application for fees to compensate them for time spent in litigating their fee application which Shadis and Prandini hold is permissible under the Civil Rights Attorneys' Fees Awards Act in vindicating civil rights under Title VII. We believe that the policy considerations leading to such awards in vindicating Title VII rights are equally applicable to cases such as the instant case where counsel fees are authorized under the court's equitable powers to compensate successful plaintiffs in a common benefit action in which the benefit consists of the vindication of the class' rights conferred by Title I of LMRDA. In such cases, we hold that the district court may award attorneys' fees for time spent litigating the fee application.
 
 
 79
 For the foregoing reasons, the judgment of the district court will be affirmed in part and the case remanded in part for further proceedings consistent with this opinion.
 
 
 
 [1]
 Joint Council No. 53 settled with Pawlak and Stafford and was dismissed without prejudice from the complaint
 
 
 [2]
 In Hall v. Cole, a union member brought an action claiming that his right to free speech as secured by LMRDA, 29 U.S.C. § 411(a)(2), was violated when he was expelled from his union for charging that certain actions and policies of the union officers were undemocratic and shortsighted. The Court affirmed the district court's order reinstating him to union membership and awarding him counsel fees
 
 
 [3]
 The district court later acknowledged that it erred with respect to Sims who kept adequate time records. See infra. at 14