Re James J. BOLLITIER

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, et al.**

Civ. A. No. 85–5311.

United States District Court,
D. New Jersey.

May 8, 1989.

James Katz, Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for Teamsters Local 676.

Alan B. Baybick, Cinnaminson, N.J., pro se.

James Bollitier, Camden, N.J., pro se.

## AMENDED OPINION

GERRY, Chief Judge.

Can a pro se plaintiff recover attorney's fees and costs for a claim brought against a union pursuant to section 101(a)(5) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(5) (1982) challenging his expulsion from the membership of the union? Can an attorney who was forced to withdraw from the litigation prior to trial recover attorney's fees for an action brought pursuant to the same statute? These are the novel questions before us today.[1]

## I. FACTS AND PROCEDURAL HISTORY

We begin by reviewing the matter before us.[2] For over twenty years pro se plaintiff James J. Bollitier ("Bollitier") was a member of defendant Teamsters Local 676 ("Local 676"). During that period, Bollitier's relations with Local 676 were stormy, to say the least. On July 3, 1984, two Local 676 officials, President John P. Greeley ("Greeley") and Business Agent/Trustee Moses Jackson ("Jackson"), filed internal union charges against Bollitier. These charges alleged that Bollitier had for twenty years harassed Greeley, Jackson, and "some of the office girls"; constantly conducted himself in a very disruptive and abusive manner at the union hall; cost Local 676 thousands of dollars in arbitration and other fees because he was re-

---

**1.** We have jurisdiction pursuant to 29 U.S.C. § 412 (1982) which states:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

**2.** In doing so, we draw heavily from our lengthy opinion of January 18, 1989. 735 F.Supp. 612.

peatedly terminated by employers because of his belligerent attitude; failed to comply with normal hiring hall procedures; and filed, out of malice, many groundless NLRB, EEOC, and civil rights charges against the Local and its officers.

Greeley and Jackson brought their charges under Article XIX, § 6(b)(6) of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Constitution.[3] That section provides that charges may be brought against officers or members for:

Disruption of Union meetings, or assaulting or provoking assault on fellow members or officers, or failure to follow the rules of order or rulings of the presiding officer at meetings of the Local Union or any similar conduct in or about union premises or places used to conduct union business.

On July 24, 1984, the Executive Board of Local 676 held a hearing on the charges against Bollitier. Two of the seven members of the Executive Board hearing the case turned out to be the brother and stepson of Greeley, one of the two charging parties. Bollitier did not, however, object on the record to the obvious conflict of interest on the part of two of the members.

By letter dated July 25, 1984, Local 676's Executive Board informed Bollitier that the Executive Board had voted to expel him from Local 676. Bollitier launched an internal appeal through Joint Council 53, an unincorporated association and intermediate appellate body of the International Union, at which time he first complained about the familial relationship between charging party Greeley and the two members of the Executive Board. That appeal was unsuccessful, as was a further appeal to the International Union.

Bollitier then turned to this Court for relief on November 4, 1985. By his counsel, Alan B. Baybick, Esq., Bollitier alleged that the International Union, Joint Council 53, and Local 676 had committed six violations of the LMRDA:

3. Local 676 is affiliated with and is a local union of the International Brotherhood of

1. Bollitier was denied assistance of counsel in the preparation of his defense in violation of the International Constitution.

2. Two members of the trial board were related to the charging party and therefore were "not uninvolved" members within the meaning of Article XIX, Section 1, of the Constitution of the International Brotherhood of Teamsters.

3. The trial board permitted Local 676's receptionist, a nonunion member, to testify in violation of the Constitution of Teamsters Local 676.

4. Jackson was a Commissioner of the Camden County Municipal Authority and therefore not entitled to file charges against plaintiff pursuant to Article IV, Section 1(c) of the Constitution of Teamsters Local 676.

5. In violation of the LMRDA, the charges alleged that Bollitier had filed charges with various governmental agencies (NLRB, EEOC).

6. The charges were barred by the statute of limitations in Article XIX, Section 6(a) of the International Constitution.

To remedy these violations, Bollitier sought to enjoin Local 676 from expelling him from membership. Bollitier also sought attorney's fees and costs. On January 13, 1986, we denied Bollitier's request for a preliminary injunction. In an order dated July 3, 1986, we also dismissed all of the alleged violations save the one involving the conflict of interest.

On November 26, 1986, Baybick requested leave of this Court to withdraw as Bollitier's counsel because Bollitier had filed an ethics complaint against him. On February 5, 1987, we entered an order granting Baybick's request.

On September 29, 1987, we allowed Bollitier to amend his complaint. In his amended complaint, Bollitier added claims for compensatory and punitive damages.

Bollitier tried his case to this Court on October 5 and 6, 1988. After weighing the evidence, we concluded that Local 676 had violated Bollitier's "full and fair hearing"

Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the International Union").

rights under section 101(a)(5) of the LMRDA because the Local Executive Board which adjudicated his fate was partially comprised of the family of his accusers.[4] Consequently, we ordered Local 676 to reinstate Bollitier as a member "subject to expulsion only after a full and fair hearing before an unbiased tribunal as mandated by § 101(a)(5)(C) of the LMRDA." *Feltington v. Moving Picture Machine Operators*, 605 F.2d 1251, 1257 (2d Cir.1979).[5]

On the other hand, we denied Bollitier's request for punitive and compensatory damages in its entirety. The LMRDA only permits recovery of damages which directly and proximately result from a violation. *McGraw v. United Assoc. of Journeymen & Apprentices*, 341 F.2d 705, 710 (6th Cir. 1965). We rejected Bollitier's claim for lost wages because we could not find a causal link between Bollitier's expulsion as a political member of Local 676 and a decrease in his earnings. We were not persuaded that Local 676 would not have referred the plaintiff out for work if he had signed the Local's out-of-work list. The fact that Local 676 improperly expelled Bollitier had nothing to do with his inability to find work; indeed, Local 676 referred Bollitier to a job with the Paul Lawrence Co. after he was expelled by the local. Bollitier lost that job, however, when he was terminated for improper conduct. The record indicates that Bollitier, had he not been fired, could have worked at Paul Lawrence Co. from October 1984 until December of 1987, the length of time Bollitier's replacement worked there. After Bollitier was fired

from the Paul Lawrence Co. he simply failed to seek work. Similarly, we denied Bollitier's request for emotional damages because Bollitier had failed to prove that he was actually or measurably injured by his expulsion and because he failed to demonstrate by competent testimony a physical manifestation of his emotional distress. Finally, we denied Bollitier's claim for punitive damages because there was no evidence to persuade us that Local 676 intentionionally created a biased Executive Board 94.

## II. THE ATTORNEY'S FEES AND COSTS PETITIONS

We come then to the question of attorney's fees and costs. In what he presents as his petition, Bollitier states that he has worked five hours a day for five days a week for two years on this litigation. He "estimates" that this amounts to 2400 hours in sum. Because labor lawyers allegedly command $100 an hour, Bollitier concludes that he is entitled to $240,000 for his time. Additionally he seeks $100 for transportation, $100 for phone calls, $25 for stamps and envelopes, $100 for xeroxing, and $288 for obtaining certified copies of letters and documents. His "[t]otal legal fees for 2 yrs." add up to $240,613.[6]

Baybick, Bollitier's former counsel, has also submitted a petition. He seeks compensation for 175.90 hours at only $75.00 per hour. He also seeks $70.00 for the filing fee and service; $91.50 for a deposition transcript; $75.00 for postage; and

---

**4.** This provision states that:
   No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
   29 U.S.C. § 411(a)(5) (1982).

**5.** We dismissed Bollitier's complaints against Joint Council 53 and the International Union, however, because Bollitier presented no evidence that either of those defendants had acted in bad faith in affirming Bollitier's expulsion or with knowledge that his expulsion was necessarily tainted by a partial hearing board.

**6.** In our previous decision, we told Bollitier to "submit a *sworn* fee petition, copying Local 676 counsel setting forth the number of hours the plaintiff and his original attorney Alan Baybick worked on the case, the tasks on which these hours were expended, the number of these hours for which the plaintiff and Mr. Baybick feel they are entitled to compensation, the hourly rate at which they believe compensation should be computed, and a memorandum of law specifying the legal principles which should guide us in making our fee award." From his two-page fee petition, we can see that Bollitier has largely ignored our request/advice.

$173.00 for photostat copying. His total fee and expenses add up to $13,602.

█ To facilitate our analysis, we will begin by determining whether a pro se plaintiff can ever recover attorney's fees under the LMRDA. We conclude he cannot. We then take up the question of whether Baybick can claim attorney's fees. We conclude that he can, although he is not entitled to the entire sum he seeks.

### A.

In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Supreme Court allowed a union member who had been undemocratically expelled from his union in violation of section 102 of the LMRDA to recover attorney's fees. The Court advanced a two-part argument. First, it determined that it had the equitable power to award fees under the common benefit doctrine. The common benefit doctrine allows a court to shift the cost of litigation from the party bringing the litigation to those benefiting from it. In *Hall*, the union member had vindicated not only his own free speech rights, but also the rights of all union members. Second, Congress had not circumscribed that power in the LMRDA. According to the Court, an award of attorney's fees was consistent with Congress' authorization of "the courts to grant 'such relief (including injunctions) as may be appropriate.'" *Id.* at 10, 93 S.Ct. at 1948 (quoting 29 U.S.C. § 412).[7]

The *Hall* Court explicitly eschewed any reliance on the private attorney general theory of fee shifting. *See id.* at 5 n. 7, 93 S.Ct. at 1947 n. 7. In *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975), however, the Supreme Court construed *Hall* as reaffirming "the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees." *Id.* at 257, 95 S.Ct. at 1621 (citing *Hall*, 421 U.S. at 4, 93 S.Ct. at 1945). In dissent, Justice Marshall contended that the *Alyeska* majority had misinterpreted

*Hall* by ignoring its equitable underpinnings. *See id.* at 277, 95 S.Ct. at 1631 (Marshall, J., dissenting). The Court of Appeals for the Third Circuit has resolved this conundrum to its satisfaction by holding that "*Alyeska* has no effect on the development or application of the 'common benefit' exception." *Brennan v. United Steelworkers*, 554 F.2d 586, 601 (3d Cir. 1977), *cert. denied*, 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978), *on remand*, 501 F.Supp. 912 (W.D.Pa.1980), *appealed sub nom. Marshall v. United Steelworkers*, 666 F.2d 845 (3d Cir.1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 52, 74 L.Ed.2d 58 (1982); *see also Pawlak v. Greenawalt*, 713 F.2d 972, 975–76 (3d Cir.1983) (relying on common benefit doctrine), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). Thus cases which turn on a private attorney general theory of fee shifting, *see, e.g., Vaughn v. Pitts*, 679 F.2d 311, 312 (3d Cir.1982) (nonlawyer cannot recover attorney's fees under Civil Rights Attorneys' Fees Award Act of 1976); *Cunningham v. FBI*, 664 F.2d 383, 386 (3d Cir.1981) (nonlawyer cannot recover attorney's fees under Freedom of Information Act), are not strictly relevant to the equitable considerations at hand. *See Prandini v. National Tea Co.*, 585 F.2d 47, 52–53 (3d Cir.1978) (distinguishing between fee shifting and common benefit claims).

█ According to *Hall*, the common benefit doctrine applies when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall*, 412 U.S. at 5, 93 S.Ct. at 1947. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The Court of Ap-

---

7. *See generally* Annotation, *Award of Attorney Fees in Suits under 29 USCS § 412*, 32 A.L.R.    Fed. 240 (1977).

peals for the Third Circuit has stated that the "overriding considerations in evaluation of 'common benefit' claims are: whether the benefits may be traced with some accuracy; whether the class of beneficiaries is readily identifiable; and whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting." *Brennan*, 554 F.2d at 604–05.

In our prior opinion, we made it clear that we thought that Bollitier's suit had provided a common benefit to the members of Local 676 because it will serve as an impetus to increase Local 676's sensitivity to the full and fair hearing rights of its members. In particular, we expressed confidence that this litigation would spur Local 676 to select its hearing boards more carefully so as to avoid partiality and bias. Bollitier has thus satisfied the first two prongs of *Brennan:* the benefits that will flow from this litigation is the increased sensitivity of Local 676 to the full and fair hearing rights of its members.

With regard to the $240,000 in attorney's fees, however, Bollitier has not satisfied the third prong of *Brennan* because we cannot find a "reasonable basis for confidence that the costs may be shifted with some precision." *Id.* Essentially what Bollitier is asking this Court to do is to tell the members of Local 676 that Bollitier has served as their counsel for the last two years and they owe him $240,000 for protecting their rights to a fair hearing. We cannot do this because this "expense" was unnecessary to this litigation and the common benefit doctrine does not require beneficiaries to bear the litigant's unnecessary costs. The common benefit doctrine exists to spread costs fairly, not provide pro se litigants with employment.

We have also given careful consideration to the argument that, while not warranting an award of $240,000, Bollitier's actions merit something of an award because he did save the beneficiaries of his litigation the cost of an attorney. This argument fails on two grounds, however. First, it ignores the requirement that "some precision" is a necessary element of shifting costs under the common benefit doctrine. *Id.; see also Cunningham*, 664 F.2d at 386 (problem of putting dollar value on pro se activities). While it is patently obvious to this Court that no attorney worth his salt would bill a client $240,000 for a two-day trial, this Court would be engaging in speculation if it attempted to adjust Bollitier's hours with "some precision" to what a hypothetical attorney would have expended on this litigation.[8] Second, it ignores the fact that "[a]lthough *pro se* litigants are likely to incur non-monetary costs that might serve as the basis for compensation, the same may be said for litigants who retain counsel. The latter group must still devote time and energy to their cases, yet [they are not compensated] for any more than the actual attorney fees and litigation costs incurred." *Cunningham*, 664 F.2d at 386.

We also note as a simple matter of semantics that *Hall* referred to counsel fees. *See Hall*, 412 U.S. at 3, 93 S.Ct. at 1946. Bollitier as a pro se litigant had no counsel. Without counsel, there cannot be counsel fees and Bollitier, contrary to his assertion (Letter of March 13, 1989), cannot earn

---

**8.** Even if we err in our conclusion on that point, however, we would not be able to award Bollitier any fee because his fee petition is fatally deficient. In *Pawlak*, the Court of Appeals for the Third Circuit set the standard for reviewing fee petitions under the LMRDA. The *Pawlak* court stated that "[o]utright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated or manifestly filed in bad faith." *Pawlak*, 713 F.2d at 978 (quoting *Jordan v. United States Dep't of Justice*, 691 F.2d 514, 518 (D.C.Cir.1982); *see also Rosario v. Amalgamated Ladies' Garment*

*Cutters' Union*, 749 F.2d 1000, 1007 (2d Cir.1984) (failure to keep accurate time records is inexcusable). Bollitier's unsworn petition contains no documentation whatsoever beyond his calculation of five hours a day for five days a week for two years equals 2400 billable hours. It also ignores the facts (1) that until February 5, 1987, he was represented by Baybick, (2) that Bollitier's litigation failed in its entirety with regard to the International Union and Joint Council 53, and (3) that Bollitier failed to secure the damages he sought from Local 676. *See Pawlak*, 713 F.2d at 979. All this activity benefited no one, not even Bollitier.

counsel fees. This conclusion is buttressed by the *Brennan* court's observation that "[c]onsidering the complexities of internal union remedies ... and recourse to the courts, and the penalties for lack of legal or technical sophistication, we cannot believe that intervenors were intended to proceed pro se." *Brennan*, 554 F.2d at 599. While *Brennan* involved a union election and this case involves the protection of Bollitier's due process rights, this comment is telling as to the direction we should follow.

Finally, we are concerned about the policy implications of awarding Bollitier any attorney's fee. Because this is a common benefit case, the holding of the Court of Appeals in *Cunningham*, a statutory fee-shifting case involving a pro se litigant, is not dispositive. Dicta in *Cunningham* suggests, however, several policy reasons why Bollitier should not recover: first, pro se litigants do not face the same financial burdens as those who retain a lawyer; second, pro se litigants lack the objectivity and detachment of counsel to ward against frivolous litigation; and third, valuation of the pro se litigant's time is problematic and arbitrary. *See Cunningham*, 664 F.2d at 386. In sum, we do not want to create a false incentive for future pro se plaintiffs to bring these actions without the advice and counsel of competent attorneys by holding out the mirage of "attorney's fees". *Cf. Hall*, 412 U.S. at 16, 93 S.Ct. at 1951 (White, J., dissenting) ("The award of fees in the occasionally successful and meritorious case will not be worth the litigation the Court's decision will invite and foster."). Consequently, we will deny Bollitier's request for $240,000 for time expended on this litigation in its entirety.

■■■ Bollitier also requests reimbursement for $613 in other costs. *See* Fed.R. Civ.P. 54(d). Our disposition of this request is guided by 28 U.S.C. § 1920 which generally limits costs to certain enumerated items. *See Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964) ("discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute"). Because transportation, phone calls, and mailing charges are not among the enumerated items and not items typically included in costs, we will deny Bollitier's request for $225 regarding those expenses. Printing and exemplification are, however, among the enumerated items in the statute. Under Local Rule 23(G)(9) of this Court, "fees for exemplification and copies are taxable when (i) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispository motion, and (ii) they are in lieu of originals which are not introduced at the request of opposing counsel." Bollitier has submitted no evidence that his printing and exemplification expenses meet that requirement.[9] It is Bollitier's burden to submit the verified Bill of Costs with "all invoices in support of the request for each item." Local Rule 23(B). Consequently, we will deny Bollitier's request for $388 regarding those expenses.

### B.

■■■ We turn to attorney Baybick's petition, which seeks $13,602 in attorney's fees.[10] As a threshold matter, Local 676 objects to Baybick's petition because Baybick withdrew from the litigation on his own motion and thus lacks standing to seek an award of fees now. We disagree with this contention. *See Mayberry v. Walters*, 862 F.2d 1040, 1043 (3d Cir.1988) (counsel who withdraws prior to trial is entitled to reasonable compensation for services while acting as plaintiff's counsel); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir.1973) [*Lindy I*] (cause of action for award of attorney's fees under the equitable fund doctrine accrues to attorney), *on remand*, 382 F.Supp. 999 (E.D.Pa.1974),

9. In its submission, Local 676 objects in particular to the claim for exemplification because it is unaware of any certified documents ever being required in the litigation.

10. Baybick informs this Court that he does not seek compensation for the majority of office consultations with Bollitier; any of the phone communications with Bollitier, the other parties, or this Court; and review and preparation of written correspondence with the same.

*vacated*, 540 F.2d 102, 110 & n. 7 (3d Cir. 1976) (in banc) [*Lindy II* ] (same). In light of our disposition of Bollitier's claim for an attorney's fee and costs, we see no conflict between Baybick's petition and Bollitier's interest.[11]

■ We are not, however, prepared to award Baybick the entire sum he seeks. Our "first inquiry should be into the hours spent by the attorney[ ]—how many hours were spent in what manner...." *Lindy I,* 487 F.2d at 167. Baybick bears the burden of proving with sufficient precision the number of his hours allocable to the one claim Bollitier ultimately prevailed on against only one defendant, Local 676. *See Pawlak,* 713 F.2d at 979. "Thus the need for adequate time records is plain." *In re Fine Paper Litigation,* 751 F.2d 562, 596 (3d Cir.1984). We then "must attempt to value those services." *Lindy I,* 487 F.2d at 167. We have read Baybick's petition, which is rather vague under the circumstances, and make the following findings.

1. We will allow 30 hours for his initial consultation with Bollitier, his review of records, preparation of the complaint, and review of Local 676's answer.

2. We will allow 10 hours for preparation of the discovery memorandum and reviewing documents with Bollitier.

3. We will allow 16.5 hours in preparation time for the motion on summary judgment because Baybick did block Local 676's motion on the one ground that Bollitier ultimately prevailed on.

4. We will not allow any of the additional time claimed by Baybick. Some of that time is expressly allocable to claims against Joint Council 53 and the International Union against whom Bollitier did not prevail. Other time is expressly allocable to the preliminary injunction Bollitier failed to secure or the fruitless motion in limine for damages which could have been avoided if Bollitier had originally requested damages.

5. We find that Baybick's hourly rate of $75.00 is reasonable given Baybick's experience, the difficulty of the litigation, and the community market rate in Camden and Burlington Counties.

6. We will disallow Baybick's request for postage, photostating, and a deposition transcript for the same reasons we disallowed similar claims by Bollitier. We will allow his request for $70.00 for filing and service. *See* 28 U.S.C. § 1920(1) (1982).

In sum, then, we will enter an order denying Bollitier's motion and granting Baybick an award of $4237.50 in attorney's fees and $70 in costs for a total of $4307.50.[12]

## ORDER

THE MATTER having been opened before the United States District Court for the District of New Jersey by James J. Bollitier, and this Court, having reviewed the submissions of the parties, and for good cause having shown,

IT IS ON THIS 8th day of May, 1989,

ORDERED THAT Teamsters Local 676 pay $3957.50 to Alan B. Baybick, Esq., AND

IT IS FURTHER ORDERED THAT Teamsters Local 676 pay $350.00 to James J. Bollitier.

## ORDER

IT IS ON THIS 8th day of May, 1989,

ORDERED that this Court's Opinion and Order of May 5, 1989, are VACATED;

AND IT IS FURTHER ORDERED that the Opinion and Order of today are filed in their place.

---

**11.** Because Bollitier launched his ethics complaint against Baybick, Baybick had no choice but to withdraw from this matter. When he withdrew, however, Baybick did reserve his claim for attorney's fees and costs. Our decision today in no way passes judgment on the merits of Bollitier's ethics complaint, a matter not before us. The Court is, however, fully cognizant of Bollitier's assertion that Bollitier, not Baybick, should recover any and all fees.

**12.** Baybick has informed the Court that Bollitier paid him a retainer of $350. Bollitier is entitled to that money. In our order, we will direct Local 676 to pay $350 directly to Bollitier.