**William PEREZ, Plaintiff,**

v.

**Gary M. PERKISS, Esquire, and Pozzuolo & Perkiss, P.C., Defendants.**

**Civ. A. No. 88–689–JLL.**

United States District Court, D. Delaware.

July 12, 1990.

O. Randolph Bragg of UAW Legal Services Plan, Wilmington, Del., for plaintiff.

Mason E. Turner, Jr. of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This is a motion for attorney fees. (Docket Item ["D.I."] 56.) The plaintiff, William Perez, obtained a jury verdict in his favor in the Fair Debt Collection Practices Act ("the Act" or "Fair Debt"), 15 U.S.C. § 1692 *et seq.*, lawsuit he brought against the defendants, Gary M. Perkiss, Esquire, and Pozzuolo & Perkiss, P.C. (D.I. 47.) Mr. Perez now seeks fees pursuant to the Act's provision for the award, in "any successful action," of "a *reasonable* attorney's fee as *determined by the court.*" 15 U.S.C. § 1692k(a)(3) (emphasis added). Mr. Perez's motion will be granted; however, the $10,905 sum sought will be reduced as noted below.

## FACTUAL BACKGROUND

At the outset of the underlying lawsuit, Mr. Perez was represented by William L. O'Day, Jr., of the UAW–GM Legal Services Plan. (*See generally* D.I. 58, Affidavit of William L. O'Day, Jr. ["O'Day Aff."].) Mr. O'Day prepared, among other things, the complaint, which was filed on December 8, 1988 (*see* D.I. 1), and the plaintiff's interrogatories and other discovery requests. (*See* D.I. 8; D.I. 21.) Mr. O'Day also responded to the defendants' discovery requests (*see* D.I. 15), deposed defendant Gary Perkiss (*see* D.I. 26), and appeared before this Court to argue a motion to compel discovery from the defendants. (*See* D.I. 58, O'Day Aff. at 6; *cf.* D.I. 14;

D.I. 17.) Mr. O'Day officially withdrew as counsel for Mr. Perez on December 14, 1989, several months before Mr. Perez's lawsuit actually proceeded to trial. (D.I. 31.)

Mr. Perez seeks an award of $3,670 for Mr. O'Day's services. (D.I. 60 at 4.) This sum is supported by an affidavit in which Mr. O'Day presents a daily record of his working time and states that he worked a total of 36.7 hours on this litigation. (*Cf.* D.I. 58, O'Day Aff. at 9.)[1] Mr. O'Day also states in his affidavit that although his employer, the UAW–GM Legal Services Plan, "does not have a standard billing rate[,]" he has "requested and been awarded attorney's fees at the rate of $100.00 per hour in Delaware State Courts, and in privately negotiated settlements in Fair Debt Collection Practices Act cases, as well as in other consumer oriented matters." (*Id.*) Accordingly, Mr. Perez seeks to recover compensation for Mr. O'Day's services at the rate of $100 per hour for the 36.7 hours expended.

On December 1, 1989, O. Randolph Bragg, also of the UAW–GM Legal Services Plan, formally entered his appearance on behalf of Mr. Perez.[2] (D.I. 29.) In connection with his representation of the plaintiff in this case, Mr. Bragg attended a pre-trial conference in chambers (*id.* at 3; *see also* D.I. 42) and prepared various pre-trial materials (*see, e.g.,* D.I. 36), including some meritorious objections to certain jury charge proposals made by the defendants. Mr. Bragg also filed an amended complaint (*see* D.I. 57, Affidavit of O. Randolph Bragg ["Bragg Aff."] at 4; D.I. 42) and, on March 7, 1990, tried Mr. Perez's case before a jury. (*See* D.I. 57, Bragg Aff. at 4.)

The entire trial, from jury selection to closing arguments, lasted approximately three and a half hours. Three witnesses testified. The jury then deliberated for a

---

1. Mr. O'Day actually attests to working 37.8, not 36.7, hours on this case. However, the other 1.1 hours are for preparation of his attorney fees affidavit. The Court will analyze this time, along with the hours claimed by Mr. Bragg for his affidavits and other aspects of this fee petition, in a separate portion of this Opinion. *See infra* pp. 887, 891–92.

2. Mr. O'Day apparently left his employment with the UAW–GM Legal Services Plan, and substitute counsel was necessary. (*See* D.I. 60 at 4.)

little over one hour before returning a verdict for Mr. Perez in the amount of $1200 ($200 in actual damages and another $1000, the maximum in statutory damages). (*See* D.I. 49.) The defendants subsequently moved, unsuccessfully (D.I. 54), for a new trial and remittitur. (D.I. 51.) Mr. Bragg filed the response to that motion on the plaintiff's behalf. (D.I. 53.)

Mr. Perez seeks an award of $5,625 for Mr. Bragg's services. (D.I. 60 at 5.) This sum is supported by two affidavits in which Mr. Bragg presents a daily record of his working time and states that he worked a total of 37.5 hours on this litigation. (*Cf.* D.I. 57, Bragg Aff. at 4, 6; D.I. 64, Second Bragg Aff. at 2.)[3] Mr. Bragg also attests to the fact that he has been awarded attorney fees at the rate of $150 per hour in two federal district courts. (D.I. 57, Bragg Aff. at 6.) Accordingly, Mr. Perez seeks to recover compensation for Mr. Bragg's services at the rate of $150 per hour for the 37.5 hours expended.

The plaintiff also seeks to recover for Mr. O'Day's and Mr. Bragg's services in preparing this fee petition. Specifically, Mr. Perez seeks $1,500 for ten hours of work by Mr. Bragg (*cf.* D.I. 57, Bragg Aff. at 4; D.I. 64, Second Bragg Aff. at 2), and another $110 for 1.1 hours of work by Mr. O'Day. (*Cf.* D.I. 58, O'Day Aff. at 9.) Thus, in sum, Mr. Perez seeks a grand total of $10,905 in attorney fees, consisting of this $1,610 for the fee petition and the $9,295, discussed above, for the underlying litigation ($5,625 for Mr. Bragg plus $3,670 for Mr. O'Day).

---

**3.** Mr. Bragg actually attests to working 47.5 hours on this case. However, the extra ten hours relate to this fee petition and as noted previously, *see supra* note 1, will be analyzed separately.

**4.** The defendants filed written objections (D.I. 61) as well as a brief and affidavit in opposition to the plaintiff's motion for fees (D.I. 62); however, they did not request oral argument or an evidentiary hearing. The Court did not decide *sua sponte* to hold a hearing because, after reviewing the parties' submissions, it was clear that a hearing would not be necessary to resolve

## DISCUSSION

### I. *Fee Request for the Fair Debt Case*

■ The defendants have advanced a number of objections to Mr. Perez's claimed total of $9,295 as reasonable attorney fees for the Fair Debt case underlying this motion.[4] Some of these objections have merit and will be discussed in greater detail below. But the defendants' first objection is frivolous: "Plaintiff has not been charged, nor will he be charged any fee by his attorneys for representation in this case as plaintiff is a member of the UAW Legal Services Plan and his attorneys are provided free of charge to plaintiff." (D.I. 61 at 2.)

In *Blum v. Stenson*, 465 U.S. 886, 894–96, 104 S.Ct. 1541, 1546–47, 79 L.Ed.2d 891 (1984), the Supreme Court held that courts should calculate attorney fee awards using a "prevailing market rate" theory, rather than a cost-based standard that would prevent or limit the award of fees to attorneys who work on a *pro bono* or non-profit basis. Although admittedly the Supreme Court was addressing a civil rights statute, 42 U.S.C. § 1988, and not the Act at issue here, both statutes use the term "reasonable attorney's fee"[5] and serve the same general purpose of shifting fees in order "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *cf. Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436, 1448–50 (3d Cir.1988).[6]

---

this motion. *See Blum v. Witco Chemical Corp.,* 829 F.2d 367, 377 (3d Cir.1987).

**5.** "[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes,* — U.S. —, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989) (quoting *Northcross v. Memphis Bd. of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973)).

**6.** Courts often apply attorney fee cases under section 1988 to cases under other fee-shifting statutes, *see, e.g., Delaware Valley,* 478 U.S. at 562, 566, 106 S.Ct. at 3096, 3098 (Clean Air Act),

Accordingly, the Court finds that Mr. Perez is not barred from recovering reasonable attorney fees merely because the legal services rendered on his behalf might have been provided without charge.

### A. Objections As to Rates and Number of Hours

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum,* 465 U.S. at 888, 104 S.Ct. at 1544 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The product of this equation is called the lodestar. *Student Public Interest Research Group,* 842 F.2d at 1441. If an attorney does not have a "market billing rate," a court should rely on the "community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity...." *Id.* at 1450; *see also Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). The plaintiff bears the burden of proving the fees sought are reasonable. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

The defendants contend that the hourly rates sought by the plaintiff are excessive and undocumented and the number of hours worked is unreasonable and indicates duplication. The Court rejects the argument as to hourly rates. With respect to the number of hours worked, however, the Court will disallow a few entries that do appear to be an unreasonable duplication of hours.

■ The Court will accept the claimed $100 per hour billing rate for Mr. O'Day. Mr. O'Day's affidavit indicates he has received fees at the rate of $100 per hour in Delaware state courts and in private settlements of cases similar to this one (*i.e.,* other Fair Debt cases). (*See* D.I. 58, O'Day Aff. at ¶ 5.) The Court finds that $100 per hour for the services of an attorney of Mr. O'Day's level of experience is both reasonable and commensurate with prevailing rates in this area. The claimed $150 per hour rate for Mr. Bragg is also reasonable, as Judge Wright of this District has noted, "in light of Mr. Bragg's considerable litigation experience." *Brown v. Eichler,* No. 84–582–CMW, slip op. at 3 (D.Del. April 28, 1988) (available on WESTLAW at 1988 WL 41400), *reprinted in* D.I. 56, Exhibit A. Mr. Bragg has practiced law for seventeen years, and has appeared in Federal court on numerous occasions. (*See* D.I. 57, Affidavit of O. Randolph Bragg ["Bragg Aff."] at 1, 5.)

■ Turning to the number of hours billed, the Court has examined the defendants' detailed objections to many of these entries and considered the Supreme Court's mandate that hours not reasonably expended should be excluded from the calculation of the lodestar. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. The Court concludes that, as a general matter, the number of hours expended by the plaintiff's attorneys—a combined total of less than two work weeks' worth of time—was reasonable for a short, Fair Debt jury trial involving three witnesses, limited discovery, one pre-trial motion, and one post-trial motion.

■ The time records submitted by the plaintiff's attorneys were contemporaneously kept (*see* D.I. 57, Bragg Aff. at ¶ 4; D.I. 58, O'Day Aff. at ¶ 4), and, for the most part, the Court does not find them to be duplicative. However, the Court will disallow fees for two particular entries by Mr. Bragg. These entries (*see* D.I. 57, Bragg Aff. at 3) reflect the time it took Mr. Bragg to take over the plaintiff's case from Mr. O'Day. The Court finds, as the defendants urge (*see* D.I. 61 at 3–4), that it would be unfair to charge them for the extra hours expended because Mr. O'Day left his employment with the UAW Legal Services Plan and thereby caused a need for substitute counsel. Hence, the 37.5 hours claimed by the plaintiff for Mr.

including the Fair Debt Collection Practices Act. *See, e.g., Mares v. Credit Bureau of Raton,* 801

F.2d 1197, 1201–05 (10th Cir.1986).

Bragg's services will be reduced by these disallowed 3.3 hours, resulting in a lower total for Mr. Bragg of 34.2 billable hours.

■ With regard to Mr. O'Day's hours, the Court credits only two of the defendants' objections. The first relates to 2.2 hours worth of in-person and telephone consultations with unnamed individuals. (*See* D.I. 58, O'Day Aff. at 3–9.) The defendants rightly point out that this case did not involve any parties other than the plaintiff (and his wife). (D.I. 61 at 4.) All of Mr. O'Day's other entries specifically describe the communications being billed as consultations or conversations with the plaintiff, the defendants or defendants' counsel, or this Court. (*Cf.* D.I. 58, O'Day Aff. at 2–9.) Thus, the descriptions employed in the entries at issue—*e.g.*, "consultation with persons outside office" (*see id.* at 3)—are not sufficiently specific in light of the facts in this case and the defendants' objections. At the very least, the plaintiff should have indicated the general purpose of such entries, as was done with other entries (*e.g.*, "trial preparation").

■ Similarly, the Court credits the defendant's objection that the plaintiff has not adequately substantiated all of Mr. O'Day's claimed travel time. Of the 2.4 hours claimed for travel, the Court will disallow two entries, totaling .4 hours, because the plaintiff has not given any indication whatsoever of the purpose or relevance of this travel or the general activity to which the travel relates. (*See id.* at 4, 8.) A third travel entry (*id.* at 6), for another .4 hours, will also be disallowed because, although the entry does indicate the travel was for the purpose of filing certain discovery responses, the Court concludes, as noted by the defendants (*see* D.I.

61 at 5), that filing such materials is not an activity that should be compensated at an attorney's billable rate. *Cf. Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 2471 n. 10, 105 L.Ed.2d 229 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at [even] a paralegal rate, regardless of who performs them.").[7]

■ "The court's focus in assessing the adequacy of submitted documentation ... is whether the documentation permits the court to determine if the claimed fees are reasonable." *Pawlak,* 713 F.2d at 978. Although the plaintiff's fee petition need not be overly detailed, *see Rode v. Dellarciprete,* 892 F.2d 1177, 1190 (3d Cir.1990), it must be sufficiently specific to allow a court "to determine if the hours claimed are reasonable for the work performed." *Pawlak,* 713 F.2d at 978. For the most part, the time records submitted by the plaintiff are more than adequate. However, in light of the defendants' challenge of these particular, ambiguous entries, the plaintiff, who bears the burden on this motion, should have provided further clarification or documentation to allow this Court to determine whether in fact the contested hours were reasonably expended for the activities noted. Having failed to do so, the plaintiff is not entitled to recover fees for these hours. The Court will therefore disallow the .8 hours of undescribed travel time and the 2.2 hours of undescribed consultation time, thereby reducing Mr. O'Day's billable time from 36.7 hours to 33.7.

## B. Calculation of the Lodestar

Given that the billable rates sought by Mr. Perez are reasonable, the Court must now multiply those rates times the number

---

7. Although recovery for such filing time is at least arguably possible, the plaintiff did not provide any affidavit or other documentation from which this Court could conclude what a reasonable fee would be for such filing/travel time (*i.e.,* non-lawyer time). As the Supreme Court recently noted in *Missouri v. Jenkins,* non-legal work "'command[s] a lesser rate. Its dollar value is not enhanced just because a lawyer does it.'" 109 S.Ct. at 2463 n. 10 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974)); *see also Ursic v. Bethle-* *hem Mines,* 719 F.2d 670, 677 (3d Cir.1983). Since the plaintiff submitted affidavits *only* as to his attorneys' billable rates, the Court has no reasoned way to determine the area's prevailing rates or billing practices with respect to filing services. *Cf. West Virginia University Hospitals, Inc. v. Casey,* 898 F.2d 357, 367 (3d Cir.) (word processing charges disallowed because of inadequate documentation of community billing practices), *cert. denied,* —— U.S. ——, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990).

of hours the Court has determined were reasonably expended in the Fair Debt case underlying this fee petition. For Mr. Bragg, the Court has already indicated that 34.2 hours was a reasonable amount of time. Multiplying 34.2 hours by Mr. Bragg's $150 per hour rate, the Court arrives at $5,130. For Mr. O'Day, the Court found that 33.7 hours was a reasonable amount of time spent on Mr. Perez's Fair Debt case. Therefore, the sum for Mr. O'Day's work will be 33.7 hours multiplied by his $100 per hour rate, which yields the sum of $3,370.

■ Adding the $5,130 for Mr. Bragg's services to the $3,370 for Mr. O'Day's work yields the lodestar. The lodestar for the Fair Debt case thus totals $8,500. This sum is "presumed to be the reasonable fee." *Rode*, 892 F.2d at 1183 (citing *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548). However, a court can adjust the lodestar, upward or downward, in certain circumstances. *See id.* at 1183–84. The burden is on the party seeking the adjustment. *Id.* (citing *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731, *reinstated*, 807 F.2d 49 (3d Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987)).

### C. Downward Adjustment of the Lodestar

■ The defendants seek a downward adjustment of the lodestar figure for several reasons.[8] First, they argue that Mr. Perez's attorneys have all along been motivated by fees, and hence "to generate these revenues, plaintiff's attorneys continuously demanded [an] unrealistically high figure settlement ... solely to force this c[a]se to trial...." (D.I. 61 at 6.) The Court rejects this argument.

The *only* settlement offer ever made by the defendants was in the amount of $500. (*See* D.I. 45.) This offer, made only two weeks prior to trial, would have covered both Mr. Perez's statutory and actual damages, as well as any claim for his attorneys' fees.[9] (*Id.*) The jury verdict in this case, however, was for $1200 (D.I. 47), over twice the amount offered by the defendants. In light of Mr. Perez's success, the Court cannot comprehend how the defendants can continue to argue that the plaintiff should have settled for their offer of a $500 settlement. Moreover, no matter how high the settlement offers urged by the *plaintiff* may have been,[10] those offers were still for significantly less money than the total sum the plaintiff, as the prevailing party, is now entitled to recover under the Fair Debt Collection Practices Act.

■ The defendants' second argument in favor of a reduction of the lodestar is that the issues involved in the Fair Debt case underlying this fee petition were neither novel nor difficult. The Court declines to reduce the lodestar on this basis. The Court has already considered the nature of the lawsuit in its initial determination of the number of hours that could reasonably have been expended on the case and the reasonable billing rate for a matter such as this. *Cf. Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

■ The defendants' final argument in favor of a downward adjustment of the lodestar is that the fees requested are disproportionate to the amount of the verdict obtained by the plaintiff. (D.I. 61 at 6.) Although the defendants are correct, this lack of proportionality does not warrant a

---

8. Although the defendants put forth various arguments for a reduction of the lodestar, they do not dispute that the plaintiff succeeded in his Fair Debt action. Nor do the defendants contend that the plaintiff's success was somehow less than complete, thereby necessitating a *Hensley* reduction. *See* 461 U.S. at 437, 103 S.Ct. at 1941.

9. At that point in time, Mr. O'Day had already performed all of the pretrial services for which Mr. Perez seeks recovery. (*Cf.* D.I. 58, O'Day Aff. at 2–9.) In addition, Mr. Bragg had already performed over a third of the services he provided for Mr. Perez's Fair Debt case. (*Cf.* D.I. 57, Bragg Aff. at 3–4.)

10. At different points throughout the litigation, the plaintiff sought settlement in the $5,000 to $8,000 range, covering both his statutory and actual damages, costs, and attorney fees. (*See* D.I. 62, Exhibits A & B.)

reduction in Mr. Perez's attorney fees. *See Fletcher v. O'Donnell*, 729 F.Supp. 422, 432 (E.D.Pa.1990); *cf. Northeast Women's Center v. McMonagle*, 889 F.2d 466, 474–75 (3d Cir.1989) (discussing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990).

Attorney fee awards under fee-shifting statutes often bear little or no relation to the actual or statutory damages recovered under those statutes. *See, e.g., Northeast Women's Center*, 889 F.2d at 471 (RICO). This result is sanctioned because, as our Court of Appeals has noted, fee shifting statutes "enhance enforcement of important civil rights, *consumer protection*, and environmental policies." *Student Public Interest Research Group*, 842 F.2d at 1449 (emphasis added). Fee awards at "competitive rates" help "assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing [these] public interest claims will be vindicated." *Id.*

Having rejected all of the defendants' arguments for a downward adjustment, the Court will award Mr. Perez fees in the full amount of the lodestar.

## II. *Recovery of Fees for Litigating this Motion*

■■■ Mr. Perez also seeks to recover fees for the hours expended by his attorneys in connection with this fee petition. Such fees are, of course, recoverable. *Prandini v. National Tea Co.*, 585 F.2d 47, 54 (3d Cir.1978). However, any recovery for time spent litigating a fee petition must be analyzed separately. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 924 (3d Cir.1985). In particular, in accordance with the *Hensley* rule

that the recovery of fees must be tied to the results obtained, this Court must evaluate the extent to which the plaintiff succeeded in recovering fees for the Fair Debt case underlying this petition. *Student Public Interest Research Group*, 842 F.2d at 1455 (discussing *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943). "[W]here fee applicants do not fully succeed in recovering their fees, the fee award must be reduced to reflect incomplete success on the fee award." *Id.*

■■■ In this case, the plaintiff seeks recovery of $1610 for time expended in connection with this fee petition. This sum consists of ten hours of Mr. Bragg's time and 1.1 hours for Mr. O'Day, using the hourly rates already deemed reasonable by this Court. The plaintiff's affidavits (D.I. 57; D.I. 58; D.I. 64) adequately document these claimed hours, and the Court cannot say that the amount of time spent by the plaintiff's attorneys on this fee petition is unreasonable. This is particularly the case where the defendants have not even responded to the affidavit submitted by the plaintiff which covers most of the hours spent on the fee petition.[11] *Cf. Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719–20 (3d Cir.1989) (court should not grant a *sua sponte* reduction of the requested fees). Accordingly, using the rates already deemed reasonable and viewing all of the claimed hours as reasonably expended, the Court finds that the lodestar for this fee petition is $1610.[12]

■■■ The only issue left for consideration is whether this fee petition lodestar warrants a *Hensley* reduction. *See* 461 U.S. at 435–36, 103 S.Ct. at 1940–41. That is, should the Court reduce the lodestar because of partial success. *See, e.g., West Virginia University Hospitals*, 898 F.2d at

---

11. The defendants did respond to the plaintiff's earlier affidavits that covered 1.7 hours of the total 11.1 hours claimed for fee petition services. However, the defendants stated simply that the claimed 1.7 hours were excessive. (*See* D.I. 61 at 3, 5.) Clearly, this general statement, standing alone, is not sufficient to permit this Court to conclude the hours claimed are excessive. *Cf. Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir.1989) ("[W]e

emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive.").

12. 1.1 hours for Mr. O'Day multiplied by his $100 per hour rate equals $110. Ten hours for Mr. Bragg multiplied by his $150 per hour rate equals $1500. $110 plus $1500 yields the lodestar: $1610.

367 (reducing fee award because fee petition not completely successful). The Court concludes that such a reduction is not warranted because the plaintiff was clearly very successful in litigating this fee petition.

The Court adopted the hourly rates advocated by Mr. Perez, and declined to impose the downward lodestar adjustment sought by the defendants. The Court also granted virtually all of the hours claimed by the plaintiff. Finally, Mr. Perez sought to recover a total of $9,295 for his attorneys' services in his Fair Debt case, and the Court found that $8500 was reasonable. *See supra* p. 890. Thus, Mr. Perez recovered approximately 92 percent of the sum sought. Moreover, with respect to these minor reductions, the Court notes that *Hensley* itself teaches that "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." 461 U.S. at 440, 103 S.Ct. at 1943. Mr. Perez will therefore be able to recover the full $1610 requested for his attorneys' services on this fee motion.

## CONCLUSION

Because Mr. Perez was successful in his Fair Debt case against the defendants, he is entitled to recover attorney fees. Reasonable attorney fees for the Fair Debt case amount to $8500. Mr. Perez is also entitled to recover fees for the time expended by his attorneys on this fee motion, and the reasonable fees for these services come to $1610. The Court will therefore award Mr. Perez a total of $10,110 in attorney fees.