**Lisa ALTERGOTT, Plaintiff,**

v.

**MODERN COLLECTION TECHNIQUES, INC., et al., Defendants.**

**No. 93 C 4312.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 19, 1994.

Cathleen C. Cohen, Daniel A. Edelman, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, for plaintiff.

Kenneth A. Michaels, Jr., Kenneth Michaels & Associates, Chicago, IL, for defendants.

## *MEMORANDUM OPINION*

KOCORAS, District Judge:

This matter is before the Court on the plaintiff's petition for attorneys' fees and costs. The plaintiff, Lisa Altergott ("Altergott"), obtained a favorable ruling on summary judgment finding the defendant, Modern Collection Techniques, Inc. ("MCT"), liable under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

Altergott now seeks attorneys' fees and costs pursuant to the fee shifting provision of the FDCPA, 15 U.S.C. 1692k(a)(3). Section 1692k(a)(3) authorizes recovery in "any successful action" of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). We grant Altergott's motion for attorneys' fees and costs, subject to the adjustments noted below.

## BACKGROUND

This petition for attorneys' fees and costs follows a June 22, 1994 ruling on cross-motions for summary judgment in which this court held the defendant, MCT, liable for violations of the FDCPA, 15 U.S.C. §§ 1692g and § 1692e(11). The facts of the underlying suit are as follows: In 1990, the plaintiff, Altergott, bought a car, and the car dealer placed a loan with First Midwest Bank. Altergott met this loan obligation for the first two years of the loan. In 1992, Altergott traded in the car to a used car dealer and did not pay off the loan. According to Altergott, the used car dealer was supposed to pay off the loan, but it failed to do so and declared bankruptcy. Eventually, the bank repossessed the car from the dealer and sold the car for a price less than the outstanding loan balance, resulting in a deficiency. The bank turned the collection of that sum over to the defendant, MCT.

MCT sent four collection letters to Altergott between September, 1992 and April, 1993. Altergott did not file a written dispute of the claimed debt with MCT during this time. In April, 1993, the bank authorized MCT to file suit against Altergott, and MCT contacted attorneys who drafted a complaint. That complaint was never filed. In August, 1993, Altergott was released from the loan by the bank, in exchange for her agreement not to pursue the bank for allegedly improperly repossessing the car.

Altergott, through her attorneys at Edelman & Combs, filed the instant lawsuit against MCT in July, 1993, alleging various violations of the FDCPA. The complaint set forth allegations about each of the four collection letters sent to Altergott and requested statutory damages, actual damages, and attorneys' fees and costs.

On June 22, 1994, ruling on cross-motions for summary judgment, this court held that MCT was liable for violations of the FDCPA and awarded modified statutory damages of $300.00 to Altergott. Costs and attorneys' fees were to be requested by a separate motion. Altergott now petitions this court for attorneys' fees and costs incurred during the course of this litigation. Specifically, Altergott seeks $9308.25 in attorneys' fees and $431.00 in costs.

## DISCUSSION

■ Where liability is found under the FDCPA, section 1692k(a)(3) allows the successful party to ·recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. 1692k(a)(3). The method for determining an appropriate fee award in such cases was set forth by the United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[1] Initially, the number of hours reasonably expended on the case is multiplied by a reasonable hourly rate. *Id.* at 433, 103 S.Ct. at 1939. The resulting figure is referred to as the lodestar amount, and this may be adjusted upward or downward. *Perez v. Perkiss,* 742 F.Supp. 883, 888 (D.Del.1990). The Seventh Circuit requires the District Court to subtract specific dollar amounts from the lodestar figure if it finds that downward adjustment is appropriate. *Lynch v. Milwaukee,* 747 F.2d 423, 428–29 (7th Cir.1984). The plaintiff bears the burden of proving the fees sought are reasonable. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. In the present case, Altergott received a judgment in which MCT was found liable under the FDCPA. As the successful party in the dispute, Altergott's attor-

**1.** *Hensley* involved a fee award under section 1988. However, the § 1988 attorney fee cases are often applied to other fee-shifting statutes. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 562, 566, 106 S.Ct. 3088, 3096–97, 3099, 92 L.Ed.2d 439 (1986) (Clean Air Act); *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201–05 (10th Cir.1986) (FDCPA).

neys are therefore entitled, under 15 U.S.C. 1692k(a)(3), to reasonable fees and costs.

■ Edelman & Combs, the firm which represented Altergott in her dispute with MCT, is requesting an award of $9308.25 in attorneys' fees and an additional $431.00 in costs. The attorneys assert that this figure actually represents ¾ of the time actually spent on the case. This is to reflect the fact that the court denied the plaintiff's motion for summary judgment as to the liability of one defendant.

We will first examine the number of hours claimed by Altergott's attorneys. The total number of hours claimed by the attorneys at Edelman & Combs is 95.8. This total reflects hours worked by five people: one partner, two associates, and two legal assistants/law clerks.

From the outset, we note that the time records submitted by Edelman & Combs contain numerous instances in which excessive time was used to perform a given task. In other instances, unnecessary duplication occurred. We will address several of these instances below.

Daniel Edelman, a named partner, submitted time records asserting 6.0 hours spent on Altergott's case. His work on the case consisted of preparing the complaint and demand letters, preparing FDCPA discovery, and revising some papers for which his staff and associates billed an abundant amount of time. Edelman bills out at $275.00 per hour. We note that he has been practicing law since 1976 and is an attorney with considerable skill and experience in consumer cases like the one before us. *See* Declaration of Daniel A. Edelman, Appendix A, Plaintiff's Petition for Attorney Fees and Costs. While this skill and experience may justify his high hourly rates, it also makes the amount of time that Edelman spends on a relatively simple task considerably more suspect. We find the 6.0 hours which Edelman billed to be overly excessive, and will allow Edelman 2.0 hours at his hourly rate of $275.00.

Tara Goodwin is an associate at Edelman & Combs. Goodwin graduated from law school in 1991. She bills out at $135.00 per hour. Goodwin's contribution to this case was minor. Her records show 5.9 hours spent on Altergott's case. The bulk of this time was spent in reviewing the file and preparing Altergott for her deposition, which Goodwin attended along with another associate from Edelman & Combs, Michelle Weinberg. We find that excessive time was taken in performing several of these tasks, and we find that the attendance of two associates at Altergott's preparation session and later at Altergott's deposition was unnecessarily duplicative. As such, we will reduce the time claimed by Goodwin to 3.0 hours, billable at her usual rate of $135.00 per hour.

Michelle Weinberg is the second associate at Edelman & Combs to work on Altergott's case. Weinberg graduated from law school in 1992, and she too bills at a rate of $135.00 per hour. Weinberg's records indicate 61.2 hours spent on Altergott's case, the greatest amount of time spent by any of the attorneys. Weinberg's contributions include in-court status calls, discovery matters, and drafting documents for an amended complaint, a protective order, a motion to compel, and summary judgment. There is no question that Weinberg's contribution was significant. However, a closer look reveals that overly excessive amounts of time were spent on virtually all aspects of her work. Several instances of this are delineated below.

For example, Weinberg bills 1.5 hours for drafting a protective order. We note that the resulting order is 2½ pages long and fairly standard in its content. As such, she will be allotted 0.5 hours for the protective order. The same can be said about the motion to compel. Weinberg claims 4.3 hours spent in drafting a standard motion to compel and an equally uncomplicated memo in support of the motion to compel. We believe this time to be excessive, and will allot Weinberg 2.0 hours for these tasks.

The greatest instance of excessive hours claimed can be found relating to Weinberg's work on the summary judgment. In connection with preparing the documents for summary judgment, Weinberg's records indicate 26.7 hours spent. In light of the fact that this was the second prepared motion for

summary judgment, we find that this number is clearly excessive. Several months earlier, a law clerk had spent 9.0 hours working on a summary judgment motion. An additional hour was then spent by Edelman revising the law clerk's work. We note that the later summary judgment worked on by Weinberg substantially reiterated the arguments of the first summary judgment. The only substantive change was the addition of one individual defendant who ultimately received a summary judgment in his favor. As such, we reduce the amount of time spent on the documents for summary judgment to 7.0 hours.

In addition to those instances related above, we have subtracted additional time from Weinberg's records. The reasons include excessive time to perform a task, unnecessary duplication of services (e.g., Weinberg and Goodwin both prepared Altergott for her deposition, both attended, and both billed for it), and contact with the client which were not germane to the lawsuit. Weinberg's records indicate 61.2 hours spent on the Altergott case. We will allow her to recover for 25.0 hours at her customary rate of $135.00.

Finally, two law clerks/legal assistants worked on the Altergott case. Both of these persons, Elizabeth Demos and Maura McMahon–Zeller, are being billed out at a rate of $75.00 per hour. Demos performed minor, ministerial duties such as copying and filing documents. Her records indicate 2.7 billable hours. We will allow her 1.0 hour of billable time. McMahon–Zeller records 20.0 hours of billable time. Her contribution included drafting the first summary judgment motion, drafting the plaintiff's affidavit and statement of material facts, and drafting the reply in support of the motion to amend the complaint. In evaluating McMahon–Zeller's time records, we find that the 9.0 hours spent on the first summary judgment motion is excessive, as is the 7.0 hours spent drafting the plaintiff's affidavit and the statement of material facts (both of which contain much of the same information). As such, we allot 9.0 hours for the time McMahon–Zeller spent on the case. Both Demos and McMahon–Zeller may be billed at their requested rate of $75.00 per hour.

To summarize, the following represents our determination of the reasonable number of hours for the work performed by Altergott's attorneys at Edelman & Combs:

| NAME | HOURS CLAIMED | HOURS EXCLUDED | HOURS ALLOWED |
| --- | --- | --- | --- |
| Edelman | 6.0 | 4.0 | 2.0 |
| Goodwin | 5.9 | 2.9 | 3.5 |
| Weinberg | 61.2 | 36.2 | 25.6 |
| Demos | 2.7 | 1.7 | 1.0 |
| McMahon–Zeller | 20.0 | 11.0 | 9.0 |
| TOTALS | 95.8 | 55.8 | 40.0 |

■ We now turn to a consideration of the hourly rates. Edelman & Combs have offered substantial evidence of their experience and expertise in this type of litigation. They also offer evidence that their rates are reasonable and consistent with the market rate for this type of work and cite several cases supporting the reasonableness of similar hourly rates under comparable circumstances. See Declaration of Daniel Edelman, Appendix A, Plaintiff's Petition for Attorney Fees and Costs. As such, we find the requested hourly rates to be reasonable. Daniel Edelman will be permitted to recover at $275.00 per hour. Each of his two associates may recover at $135.00 per hour. Finally, the two law clerks/legal assistants who worked on the case may recover at $75.00 per hour.

The lodestar figure is produced by multiplying the number of hours reasonably expended by a reasonable hourly rate. Here, the calculations are as follows:

| NAME | HOURS | RATE | AMOUNT |
|------|-------|------|--------|
| Edelman | 2.0 | $275.00 | $550.00 |
| Goodwin | 3.0 | $135.00 | $405.00 |
| Weinberg | 25.0 | $135.00 | $3375.00 |
| Demos | 1.0 | $75.00 | $75.00 |
| McMahon–Zeller | 9.0 | $75.00 | $675.00 |
| TOTAL: | 40.0 | | $5080.00 |

■ This yields a total of $5080.00. This sum is "presumed to be the reasonable fee." *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). However, a court can adjust the lodestar, upward or downward, in certain circumstances. *See Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40 (1983) (listing twelve factors which can adjust the amount). The burden is on the party seeking the adjustment. *Perez v. Perkiss,* 742 F.Supp. 883, 890 (D.Del.1990). MCT argues that the awarded fees should be reduced because of the dilatory and harassing conduct of the Altergott attorneys. We note that the Altergott attorneys pursued this relatively minor case in a rather aggressive manner. We also recognize that a fine line can exist between harassing tactics and aggressive lawyering. While we do not feel that this line has been crossed by the Altergott attorneys to the extent that they would forfeit their right to fees, we do note that this relatively simple case could have and should have been pursued in a far more efficient manner.

■ One of the twelve factors which *Hensley* deems relevant when adjusting a lodestar amount is "the amount involved and the results obtained." *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3. As MCT points out in its Response Memorandum, as far back as September 13, 1993, this court suggested that Altergott could file a motion for judgment on the pleadings on the basis of MCT's answer to her complaint. In its answer, MCT admitted that the validation notice contained in its first letter to Altergott was incomplete and therefore in violation of the FDCPA. While the Altergott attorneys were under no obligation to pursue this course of action, we note that given the statutory cap on damages and the relatively minor injury alleged by Altergott, such a course might have been wise. Seventy percent of the legal fees incurred by the attorneys at Edelman & Combs were billed after September, 1993. We find the amount and timing of these fees to be relevant to the evaluation of the results obtained. Altergott's eventual judgment was for $300.00. Given the facts of the case, her recovery could never have been much more than that. Still, in calculating a reasonable amount to which Altergott's attorneys are entitled, we choose not to reduce the award by seventy percent. We do find, however, that a significant amount should be subtracted from the lodestar amount. MCT should not have to shoulder the entire financial burden occasioned by Edelman & Combs' failure to make a reasonable assessment of the value of their case. We therefore reduce the above figure of $5080.00 by one-half. The Altergott attorneys are entitled to "reasonable" attorneys fees in the amount of $2540.00.

■ Finally, we address the costs. Edelman & Combs submits a listing of costs totaling $431.00. We will exclude the amounts for postage and messenger services because we consider these items to be overhead, and thus not recoverable from the client. We also exclude the amounts claimed for photocopying because these costs were not explained in terms of the documents photocopied or the number of copies made, so they are not properly supported. Finally, we exclude as unsupported the amount claimed for the Department of Insurance, for it does not identify the subject, the basis of cost, or its connection to the case against MCT. This eliminates $142.40 from the $431.00 requested by Edelman & Combs. The remaining costs which include filing fees and service through the Sheriff will be allowed. Thus, the Altergott attorneys are entitled to $288.60 in recoverable costs.

## CONCLUSION

For the reasons stated above, we award Edelman & Combs $2540.00 in attorneys' fees and $288.60 in costs from defendant MCT.