MIDNIGHT SESSIONS, LTD. t/a After Midnight, et al.

v.

CITY OF PHILADELPHIA, et al.

Civ. A. No. 90–0132.

United States District Court,
E.D. Pennsylvania.

Jan. 10, 1991.

Michael G. Trachtman, Jonathan K. Hollin, Ethan N. Halberstadt, Powell, Trachtman, Logan & Carrle King of Prussia, Pa., for plaintiffs.

Richard G. Freeman, Deputy City Sol., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

This is a civil rights case involving an alleged conspiracy under color of state law to deprive plaintiffs of their rights in designing and operating a nightclub through the defendants' improper use of city agencies and the police force. Plaintiffs, Midnight Sessions, Ltd., t/a After Midnight, et al., are a corporate entity which designed and constructed two nightclubs in Philadelphia. On January 8, 1990, plaintiffs brought this case alleging causes of action pursuant to 42 U.S.C. § 1983, and the fifth and fourteenth amendments, arguing that defendant's conduct resulted in an unconstitutional taking of plaintiffs' property. On August 1, 1990, the jury returned a verdict in favor of plaintiffs finding that defendant had violated plaintiffs' substantive due process rights, and procedural due

process rights, and that defendant's conduct resulted in an unconstitutional taking of plaintiff's property. The jury awarded plaintiffs $3,075,000.00 in damages.

Presently before the court is plaintiffs' Application For Attorneys' Fees and costs. Pursuant to 42 U.S.C. § 1988, plaintiffs, as the prevailing parties in their § 1983 civil rights action, are entitled to their attorneys' fees and costs. Plaintiffs seek reasonable attorneys' fees, an upward adjustment of the fees (contingency enhancer), costs, expert fees, attorneys' fees for the fee application and immediate payment of these fees. After careful consideration of plaintiffs' application, the response thereto, and the entire record of the case, the court shall award attorneys' fees and costs as specified in the rest of this opinion.

## I. *Factual Background*

The fees and costs requested are related to the planning, researching, drafting and filing of plaintiffs' complaint, opposition to various motions to dismiss and motions for summary judgment filed by defendants, plaintiffs' motions for summary judgment and preparation for and participation in the related proceedings including the trial of the case. Plaintiffs also request fees and costs related to drafting and filing motions for discovery requests, interrogatories, and preparation for, and attendance at, numerous depositions. A brief outline of the proceedings (as set forth in plaintiffs' petition) follows.

In August of 1989 plaintiffs, after discussing their case with other firms who refused to accept the case, met with attorneys regarding the possibility of retaining Powell, Trachtman, Logan & Carrle as counsel for their civil rights claim against the City of Philadelphia. After reviewing the facts with plaintiffs and preparing and distributing a memorandum of the facts of the case to the other members of the firm, Mr. Trachtman had a law clerk do preliminary research regarding the fact scenario. Ultimately, Mr. Trachtman agreed to take the case on a full contingency basis, despite the risk of loss and, therefore, the prospect of nonpayment after the protracted and complex litigation of this case. The principals of Mr. Trachtman's law firm assented to this arrangement with the expectation that, if successful, they would recover between two to three times their regular billing rate (Plaintiffs' Petition p. 2).

On January 8, 1989, plaintiffs filed an extensive complaint alleging that the defendant city's policies regulating the licensing of dance halls violated plaintiffs' civil rights. Plaintiffs' attorneys had to then embark on a seven-month period devoted to extensive discovery, research and trial preparation. Plaintiffs first drafted and served many detailed interrogatories and document requests before any defendant had answered the complaint. Plaintiffs also had to file several discovery motions to exact responses from the defendants which eventually resulted in hundreds of pages of answers to the interrogatories and thousands of documents.

After the filing of the complaint, defendants filed a motion to dismiss. Plaintiffs had to respond to this motion which the Court ultimately denied on May 31, 1990. Following the denial of Defendants' Motion to Dismiss, the parties had to conduct discovery within a 90–day discovery period ending on July 2, 1990. During this period of discovery, plaintiffs' counsel had either taken or attended the depositions of Robert D'Agostino, Captain Clifford Barcliffe, Alan Kessler, Lieutenant W. Kase, Sergeant Grutzmacher, Gussie Chudnoff, Dorothy Gallman–Williams, Cureley Cole, John Plonski, Henry Herling, Clarence Mosley, Charles Duncan, James Tayoun, Leslie Gerstein, John Marini, Lt. Robert Pitney, Sgt. John Shaw, Flora Wolf, Joan Baizer, Jane Robinson, Marvin Finkelstein, Rick Snyderman, David Wismer, Mark Levy, Andrew Toy, Sally Hunter, Richard Singer, James Helman, Donald Welch, Alan Manoff and Jack Manoff.

After the end of the discovery period, this court required all summary judgment motions to be filed by July 5, 1990. This required a complete analysis and summary of the extensive discovery within a relatively short time-frame. Plaintiffs filed one motion for summary judgment on July 5.

Defendants filed four motions for summary judgment by the deadline to which plaintiffs had to respond by July 11, 1990. The case went to trial on July 23, 1990 and on August 1, 1990, the jury returned a verdict for the plaintiffs finding that defendant had violated 42 U.S.C. § 1983 by denying plaintiffs their substantive and procedural due process rights, and by unconstitutionally taking plaintiffs' property. The jury awarded damages of $3,075,000.00.

## II. *Legal Standards*

Under 42 U.S.C. § 1988, the court may allow reasonable attorneys' fees to the prevailing party in a suit brought under 42 U.S.C. § 1983. To be considered a "prevailing party," the plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). If the plaintiff succeeds on " 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* Success on a legal claim which can be characterized as "purely technical or de minimis," however, would justify a finding that plaintiff is not a prevailing party for § 1988 fee purposes. *Id.*

■ Assuming "prevailing party" status exists, the district court must make an initial estimate of a reasonable attorneys' fees, commonly referred to as the "lodestar," by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In determining the time spent and the nature of the services provided, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted.... [y]et some fairly definite information as to the hours devoted to various general activities" is required. *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). The focus is on whether the documentation permits determination of the reasonableness of the fees requested, and outright denial of requested fees for lack of adequate documentation will be appropriate only in very limited circumstances. *Id.* Hours not reasonably expended on the litigation must be excluded from the calculation. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939.

■ Other considerations, including the results obtained, may lead the district court to adjust the lodestar upward or downward. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. First, in situations when the prevailing plaintiff has succeeded on only some of their claims, an award of fees for time expended on unsuccessful claims may not be appropriate. *Id.*, 461 U.S. at 436, 103 S.Ct. at 1941. In such situations, the court "should consider whether or not the plaintiff's unsuccessful claims were related to claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorneys' fees for hours reasonably expended on unsuccessful claims...." *City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986). When a plaintiff achieves limited success in civil rights cases involving a common core of facts and related legal theories, the district court should exercise its equitable discretion in arriving at a reasonable fee either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff. *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989)). On the other hand, "[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee" and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

■ Second, the Supreme Court has rejected the proposition "that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986); *see also Cunningham v. McKeesport,* 807 F.2d 49, 51–54 (3d Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987) (citing *City of Riverside* ). And last, the most critical factor in determining an appropriate fee award is the degree of success obtained. *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.

In considering the reasonableness of a § 1988 fee request, the Supreme Court has often referred to the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974):

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron,* 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 943 n. 5, 103 L.Ed.2d 67, 74 n. 5 (1989).[1]

■ With regard to hourly rates, the court must determine the reasonable hourly rate prevailing in the community for similar work and is required to consider such factors as the expertise, experience, position, and reputation of the attorneys involved. *Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). Hours chargeable to claims against defendants who settle or who are found not liable may be charged against remaining defendants only if plaintiffs can show that such time was "fairly devoted to the prosecution of the claim against that specific defendant." *Pawlak,* 713 F.2d at 979. In addition, duplication in hours billed or billings of a large number of hours by several attorneys for strategy and other conferences may warrant reduction in the fee request. *Daggett v. Kimmelman,* 811 F.2d 793, 797 (3d Cir.1987).

### III. *The Fee Petition*

As a result of their successful prosecution of a § 1983 claim, plaintiffs have filed a request for fees and costs as listed below.

### A. *Fees and Costs Requested*

Plaintiffs fee petition seeks the following:

Legal Fees:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Michael G. Trachtman | 654.6 | $150.00 | $ 98,190 |
| Jonathan K. Hollin | 454.2 | 125.00 | 56,775 |
| Ethan N. Halberstadt | 279.4 | 90.00 | 25,146 |
| Eugene V. Bonner | 15.3 | 90.00 | 1,422 |

---

**1.** The Third Circuit has identified the relevant factors in assessing the reasonableness of a fee award as follows:

the number of hours spent on the litigation; the nature of the services provided; the value of the attorneys' time based on a reasonable hourly rate; the contingent nature of success in the litigation; and 'the extent, if any, to which the quality of the work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled.... The following factors are to be considered in evaluating the quality of the attorneys' work: 'the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of the recovery obtained.' *Pawlak v. Greenawalt,* 713 F.2d 972, 977 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984).

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Paul A. Logan | 6.0 | $150.00 | $ 900 |
| Gerald Berkowitz | 2.6 | 125.00 | 325 |

| Law Clerks | Hours | Rate | Lodestar |
|---|---|---|---|
| Suzanne S. Detar | 107.9 | $60.00 | $ 6,474 |
| William D. Longo | 93.0 | 60.00 | 5,580 |
| Mark L. Freed | 8.7 | 60.00 | 522 |
| Eileen M. Coyne | 80.7 | 60.00 | 4,842 |

| Paralegals | Hours | Rate | Lodestar |
|---|---|---|---|
| Susan M. Bell | 213.4 | $60.00 | $ 12,804 |
| Fay B. Hunsberger | 5.0 | 60.00 | 300 |

|  | Total Fees: | $213,280 |
|---|---|---|

Costs:

| | |
|---|---|
| Telephone | $ 45.10 |
| Postage | 413.63 |
| Courier | 187.25 |
| Telefax Charges | 60.08 |
| Duplicating | 6,276.00 |
| Computer Research | 5,704.89 |
| Travel and Parking | 410.35 |
| Meals | 127.80 |
| Filing Fees | 120.00 |
| Service of Process | 399.50 |
| Court Reporter | 4,320.60 |
| Witness Fees | 710.00 |
| Miscellaneous | 288.46 |

| | Total Costs: | $19,063.66 |
|---|---|---|
| **TOTAL FEES AND COSTS** | | $232,343.66 |

---

### B. *Prevailing Party Analysis*

Plaintiffs initiated this action to recover damages for the expenses and profits lost by plaintiffs as result of defendants' denial of dance hall permits to plaintiffs. After trial and deliberations a jury returned a verdict in the plaintiffs' favor on plaintiffs' § 1983 claims. The jury awarded damages in excess of 3 million dollars to compensate for out-of-pocket expenses and lost profits.

██ To be considered a "prevailing party," plaintiffs "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). If the plaintiff succeeds on " 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* Based on the resolution of the instant litigation as described above, it is clear that the legal relationship between the plaintiffs and the defendants has changed; plaintiffs have succeeded on several significant issues and achieved nearly all of the benefits they sought in bringing this suit. Accordingly, the court concludes that plaintiffs are "prevailing parties" for purposes of § 1988 and thus are entitled to pursue a fee award under that statute.

### C. *Reasonableness of Hourly Rates*

██ The hourly rates requested in the revised fee petition are as follows: Michael

G. Trachtman, $150; Jonathan K. Hollin, $125; Ethan N. Haberstadt, $90; Paul A. Logan, $50; Gerald s. Berkowitz, $125; Eugene V. Bonner, III, $90; law clerks William D. Longo, Suzanne S. Detar, Mark L. Freed and Eileen M. Coyne, $60; paralegals Susan M. Bell and Fay B. Hunsberger, $60. These are the regular billing rates for all of the people involved in this litigation. Absent extraordinary circumstances, an attorney's usual billing rate charged to private clients is generally accepted as her or his reasonable rate for fee awards. *Student Public Interest Research Group v. AT & T Bell Lab.,* (*SPIRG*) 842 F.2d 1436, 1445 (3d Cir.1988) (citations omitted).

Michael G. Trachtman is a name partner in the law firm of Powell, Trachtman, Logan & Carrle. Trachtman received his law degree from the Villanova University School of Law in 1974. While a student at Villanova Law School, Trachtman served as Case and Comment Editor of the Law Review, published two articles in the Law Review, and, upon graduation, was appointed to the Order of the Coif, an honor reserved for those students graduating in the top 10% of the class. After law school Trachtman commenced his career as a practicing lawyer. He has been a litigator for sixteen years. Trachtman has been active in Montgomery County Bar Association activities. He has also practiced law regularly in the Federal Courts. The court also notes that Mr. Trachtman has practiced in front of this court in the past and has successfully litigated claims.

Jonathan K. Hollin is an associate in the Powell firm. Hollin graduated from the Duke University School of Law in 1982. From 1982 to 1984, Hollin served as a Montgomery County District Attorney. He also served as general counsel for a Philadelphia-based company where he supervised litigation and the prevention of litigation. Hollin joined the predecessor to the Powell firm in 1987 and is presently the primary assistant to the chief litigator, Trachtman.

Ethan N. Haberstadt and Eugene V. Bonner, III are associates at the Powell firm. Both graduated from the Villanova University School of Law in May, 1989. Haberstadt and Bonner served as a law clerks to the firm for two years prior to their graduation from law school.

William D. Longo is an associate with the Powell firm. He graduated from the Dickinson School of Law in June, 1990. Longo served as law clerk to the firm during his final year of law school.

Paul A. Logan is a partner in the Powell firm. Logan graduated from the University of Toledo School of Law in 1979. He served as an Assistant Attorney General for the Commonwealth of Pennsylvania, Department of Transportation from 1979 to 1981. He has been in private practice ever since but he has also served as solicitor to Abington Township.

Gerald S. Berkowitz is a senior associate with the Powell firm. He graduated from the Villanova University School of Law in May, 1983. Before entering private practice, Berkowitz served as corporate counsel for a major transportation company. He is responsible for the firm's corporate and commercial law practice.

Suzanne S. Detar is a third year law student at Temple University School of Law and worked as a summer associate at the Powell firm during the summer of 1990. Mark L. Freed, Eileen M. Coyne are both third year law students at the Villanova University School of Law and were summer associates with the firm during the summer of 1990.

Susan M. Bell is a paralegal in the Powell firm. She attended Cedar Crest College where she received a Bachelor of Science Degree in Business Administration and an ABA Approved Paralegal Certificate in 1986.

Fay B. Hunsberger is also a paralegal for the Powell firm. She graduated from Bloomsburg University in 1984 receiving her Bachelor of Science Degree in Business Accounting. In 1984 she attended the Institute of Paralegal Training and received an ABA Approved Paralegal Certificate.

In light of the outstanding qualifications of the attorneys, law clerks and paralegals working on this case, as well as this court's

experience with fee petitions in other cases and the reasonableness of the hourly rates therein, *see e.g. Jane Roe v. Operation Rescue*, No. 88–5157, 1989 WL 45825 (E.D.Pa. May 1, 1989) (LEXIS, Genfed 4688) (Newcomer, J.), the court finds that the hourly rates requested are entirely reasonable. Accordingly, the court will approve the requested rates.

### D. Reasonableness of Amount of Time Incurred

#### 1. Time Related to Non–Productive Time and Unsuccessful Claims

Plaintiffs have stated that they eliminated from the petition all time spent and costs incurred related to non-productive time and time spent on claims which eventually were unsuccessful. For instance, plaintiffs have stated that they do not seek compensation for time spent in responding to private defendants' motions for summary judgment or plaintiffs' unsuccessful motion to amend the pleadings. While review of plaintiffs' billing summaries indicates that such reductions have been made, the court notes that certain descriptions of such activities have been deleted without a corresponding reduction in the number of billable hours recorded for the particular day.[2] The court also notes that certain nonproductive hours did not get eliminated from the firm's billing records.[3]

#### 2. Miscellaneous Other Matters

■ In situations when plaintiffs succeed on some but not all claims presented, the court must "consider whether or not the plaintiff's unsuccessful claims were related to claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorneys' fees for hours reasonably expended on unsuccessful claims...." *City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986). "[W]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee" and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Based on these principles, the court finds that plaintiffs' counsel in the instant matter obtained superb results and concludes that no reduction in the fee award is warranted simply because plaintiffs failed to prevail on every claim raised in the instant matter.

Defendants have raised various other challenges to plaintiffs' calculation of the hours expended by plaintiffs in this litigation. The court has reviewed and considered these other matters and finds that they do not warrant any reduction or modification beyond those already set forth in this memorandum.

#### 3. Summary of Fees Approved

After reviewing and recalculating the hours pursuant to this memorandum, this court finds that the attorneys' fees approved consist of the following:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Michael G. Trachtman | 649.05 | $150 | $ 97,357.50 |
| Jonathan K. Hollin | 445.85 | 125 | 55,731.25 |
| Ethan N. Halberstadt | 247.08 | 90 | 22,237.20 |
| Eugene V. Bonner | 15.80 | 90 | 1,422.00 |
| Paul A. Logan | 6.00 | 150 | 900.00 |
| Gerald Berkowitz | 2.60 | 125 | 325.00 |

| Law Clerks | Hours | Rate | Lodestar |
|---|---|---|---|
| Suzanne S. Detar | 107.9 | $60 | $ 6,474.00 |

**2.** The following hours will be reduced: *Hollin,* 2/14/90, 1 hour; 3/19/90, 1 hour; 3/20/90, 3.35 hours; 3/21/90, 2.25 hours; *Haberstadt,* 3/21/90, 3.07 hours; 5/15/90, 1.3 hours; 5/22/90, 3.35 hours; 5/23/90, 3.0 hours; 6/7/90, 3.75 hours; 6/25/90, 2.25 hours; 6/26/90, 4.55 hours; 7/3/90, 3.0 hours; 7/5/90, 3.05 hours; 7/6/90, 3.0; 7/10/90, 2.0; *Trachtman,* 7/10/90, 3.0 hours.

**3.** The following hours will be reduced: *Coyne,* 7/13/90, 4.0 hours; *Trachtman,* 11/17/90, 2.25 hours; 1/27/90, .3 hours; *Hollin,* 3/6/90, .75 hours.

| Law Clerks | Hours | Rate | Lodestar |
|---|---|---|---|
| William D. Longo | 93.0 | $60 | $ 5,580.00 |
| Mark L. Freed | 8.7 | 60 | 522.00 |
| Eileen M. Coyne | 66.6 | 60 | 3,996.00 |

| Paralegals | Hours | Rate | Lodestar |
|---|---|---|---|
| Susan M. Bell | 207.2 | $60 | $ 12,432.00 |
| Fay B. Hunsberger | 5.0 | 60 | 300.00 |
| TOTAL AUTHORIZED ATTORNEYS' FEES | | | $207,276.95 |

### E. *Contingency Multiplier*

█ Plaintiffs contend that a contingency multiplier is appropriate in this case because their attorneys faced the risk of total nonpayment and because it is necessary to insure that civil rights plaintiffs, as a class, can retain competent counsel.

The issue of when it is appropriate for a district court to award successful plaintiffs a contingency multiplier is one that has proven rather complicated and "elusive" due to the fact that to date, "the Supreme Court has been unable to produce a majority opinion on the issue." *Blum v. Witco Chemical Corp.*, 888 F.2d 975 (3d Cir.1989) (Sloviter, J.). In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*), the Supreme Court, in a 4–1–4 decision, upheld the availability of contingency multipliers but refused to apply one in the case before it. Four justices would have held that contingency multipliers are improper under any circumstances, stating that "in the absence of further legislative guidance, we conclude that multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." *See* 107 S.Ct. at 3087 (White, J., joined by Rehnquist, C.J., Powell, J., and Scalia, J.). Four justices would have permitted them. *See* 107 S.Ct. at 3091 (Blackmun, J., joined by Brennan, J., Marshall, J., and Stevens, J., dissenting). Justice O'Connor concurred with the White plurality on narrower grounds, recognizing, along with the dissenters, the possibility that contingency enhancement might be appropriate in some cases but denying it under the facts of *Delaware Valley II*. Because the four dissenters would allow contingency multipliers in all cases in which Justice O'Connor would allow them, her position commands a majority of the court. *SPIRG*, 842 F.2d at 1451. *See also Blum v. Witco Chemical Corp.*, 829 F.2d 367, 379–82 (3d Cir.1987).

In a series of recent opinions since *Delaware Valley II*, the Third Circuit has gone to great effort to interpret the divided holding of the Supreme Court on this issue and to provide the district courts with some clear guidance and principles to apply when reviewing fee applications that include requests for a contingency multiplier. The Third Circuit has held, in interpreting the mandate of *Delaware Valley II*, that one central theme elicits the agreement of the otherwise divided Supreme Court. *SPIRG*, 842 F.2d at 1451. All of the justices "seem to agree that the ultimate inquiry in establishing a reasonable fee must be the rate necessary to attract competent counsel, and that contingency multipliers should be awarded only when necessary to attract such counsel." *See id.*, citing *Delaware Valley II*, 107 S.Ct. at 3079 (White, J. plurality opinion); (a multiplier is only available where "the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" (O'Connor, J., concurring) (quoting Justice White's plurality opinion)); *id.* at 3091, 3092–93, 3094 (Blackmun, J. dissenting).

In *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir.1990), the Third Circuit held that contingency multipliers are necessary "to

compensate counsel for the riskiness of undertaking the litigation." *Id.* at 1184 (quoting *SPIRG*, 842 F.2d at 1451). However, the *Rode* Court cautioned that a contingency multiplier is only to be granted in rare cases and that the fee applicant has a significant burden to carry to obtain a contingency multiplier. *Id.* To meet this burden, the applicant must show:

1) how the market treats contingency fee cases as a class differently from hourly fee cases;

2) the degree to which the relevant market compensates for contingency;

3) that the amount determined by the market to compensate for the contingency is not more than would be necessary to attract competent counsel for both in the relevant market and in its case; and

4) that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market.

*Id.* (citations omitted).

After careful review of the numerous affidavits and the briefs submitted by the parties, and the applicable law, the court finds that plaintiffs have satisfied the criteria of *Delaware Valley II* and are entitled to a contingency multiplier. Exhibit H of the Fee Application provides various declarations from representatives of firms in Montgomery County. Each declarant states that their firm looks upon contingent fee cases with disfavor and that the partners in their firms would not approve the taking of a contingent fee case without the expectation of a 2 to 3 times contingency multiplier of the attorney's usual rate. Furthermore, Exhibit F indicates that plaintiffs tried to seek counsel elsewhere but were turned away due to plaintiffs' requirement that counsel take the case on a contingency fee basis. Exhibit G, the affidavit of the partners of the Powell, Trachtman firm, states that they would not have chosen to take the case without the possibility of payment at 2 to 3 times their normal hourly rates.

In *Black Grievance Committee v. Philadelphia Electric Co.*, 690 F.Supp. 1393 (E.D.Pa.1988), this court granted plaintiffs a 200% contingency enhancer when plaintiffs provided evidence, in the form of affidavits, of the difficulties encountered in obtaining counsel and the manner in which contingent fee litigation is compensated in the Philadelphia area. On this latter point, plaintiffs submitted affidavits which contended that attorneys in the Philadelphia area will accept contingent cases in civil rights actions only if their recovery would be at least double or triple their normal billing rate. For example, plaintiffs submitted the affidavit of Henry T. Reath, an experienced lawyer and partner in the firm of Duane, Morris & Hecksher, who explained:

In order to obtain approval of the [firm's] Contingent Fee Committee [to take the contingent fee case], there must be a strong showing at the outset of litigation that the chances of success are favorable. In addition to this showing, a case will not be approved for contingent representation unless the firm has a reasonable expectation of receiving at least double or triple its normal hourly fees in the event of success.

*Black Grievance*, 690 F.Supp. at 1400. Mr. Reath further stated:

The Contingent Fee Committee has not been reluctant to turn away business, and has only approved contingent fee representation in a few instances in which the prospect of fee recovery accounted for an enhancement for contingency.

*Id.*

Plaintiffs in the present case have attached to their fee application all of the affidavits which were submitted and relied upon by this court in *Black Grievance*. (Exhibit "I", Plaintiffs' Application). While these affidavits were not prepared specifically for this case, this fact does not undermine their usefulness in demonstrating the need for contingency enhancers in civil rights cases. As was carefully explained by a plurality of the Supreme Court in *Delaware Valley II*, a court's focus should be placed on the difficulty of obtaining competent counsel in the local market—not in any one particular case. 107

S.Ct. at 3091 (O'Connor, J., concurring). These affidavits bear witness to the difficulties facing civil rights litigants in obtaining competent counsel in the Philadelphia area.

Plaintiffs have submitted additional affidavits of local attorneys who explain the risks associated with contingency cases— particularly in the area of civil rights—and that they will not accept a contingency case unless they have a reasonable expectation of receiving at least double or triple their normal billing hourly fees in the event of success.

The principals in Powell, Trachtman, Logan & Carrle, Michael G. Trachtman, Paul A. Logan, and Gunther O. Carrle, have submitted a joint affidavit stating that they will not accept a contingent fee case in civil rights cases such as this one unless there is a prospect of recovering between two to three times their ordinary billing rate.

In addition, Plaintiffs have submitted the affidavit of Donald Welch, a plaintiff in this action, which verifies the difficulty he faced in obtaining competent counsel in this case. Before Mr. Welch came upon Mr. Trachtman, several other attorneys had declined representation because of the inherent risks of a contingency arrangement.

■ Furthermore, it is important to note, as plaintiffs have correctly argued, that a contingency multiplier does not result in any "windfall" to either the plaintiffs or the attorneys. The purpose of an attorneys' fee award under § 1988 is to compensate a plaintiff, not his counsel, for attorneys' fees expended in vindication of his civil rights. This important distinction was recently made clear by a unanimous Supreme Court in *Venegas v. Mitchell*, — U.S. ——, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Thus, a plaintiff who retains counsel on a contingent fee and who recovers $3 million as a result of civil rights violations must typically pay between $1 to $1.5 million in attorneys' fees. These attorneys' fees reduce the effective amount of the jury's verdict, even though the jury does not take this into account when calculating damages. Even if the plaintiffs' attorneys

prevail on a fee application for $400,000 or more, this recovery barely dents the contingency fee which the plaintiffs are contractually obligated to pay their attorneys—a contingency fee that was absolutely necessary in order to attract competent counsel.

In an appropriate case, prevailing plaintiffs may be entitled to the full amount of the contingency arrangement, provided that they can establish that the full amount of the contingency is a reasonable attorneys' fee. *See Hagge v. Bauer*, 827 F.2d 101 (7th Cir.1987) (40% contingency represented a reasonable fee under § 1988). Plaintiffs herein do not seek such an award. Nonetheless, they are entitled to a reasonable attorneys' fee, taking into account the enhanced billing rate of attorneys in civil rights contingency cases in the Philadelphia area.

■ Finally, the defendant has attempted to discredit plaintiffs' request for a contingency multiplier by characterizing plaintiffs' action as "not a novel or complex case." (Defendant's Memorandum in Opposition, p. 10). I disagree. Defendant's characterization is incorrect and is not supported by the facts. However, I note that the issue of whether this individual case was novel or particularly complex is not the relevant or appropriate focus in determining the merits of plaintiffs' request for a contingency multiplier under current law. *See Delaware Valley II*, 483 U.S. at 731, 107 S.Ct. at 3089 (compensation for contingency must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the "riskiness" of any particular case).

After careful review of the numerous affidavits and briefs submitted by the parties and the applicable law, the court finds that plaintiffs have convincingly met their burden and have demonstrated, with the requisite evidence mandated by the Supreme Court and the Third Circuit as discussed above, that they are entitled to a contingency multiplier for their efforts.

The court must now address the question of the amount that the fees should be enhanced by. The Third Circuit has made it

painfully clear that this determination may not be made by the district court's own intuition but, rather, must be reached by applying a reasonable "market-based quantitative finding." *Blum*, 888 F.2d at 983. The affidavits submitted on plaintiffs' behalf provide this court with the necessary basis to make a market-based, quantitative finding. As with the record in *Black Grievance Committee*, the record herein does include a substantiated amount by which fees need to be enhanced. The affidavits submitted attest that the local market treats contingency fee cases as a class differently from hourly fee cases and that local attorneys who consider accepting contingency cases—particularly in the area of civil rights—will not accept such cases unless they have a reasonable expectation of receiving at least double or triple their normal billing hourly fees in the event of success. Defendant has not made any attempt to contradict plaintiffs' affidavits by producing evidence that there are attorneys in the Philadelphia area who will undertake civil rights cases on a purely contingent fee basis. Plaintiffs have shown through their affidavits that the market compensates for contingency cases at a rate of approximately 200% and that it would be significantly more difficult for plaintiffs to obtain counsel willing to handle civil rights actions if plaintiff's counsel had no prospect of receiving a contingency enhancer.

I conclude that, based on the affidavits, a 200 percent enhancer is necessary, and appropriate, to attract competent counsel without producing a windfall to the attorneys.

### F. *Costs*

Plaintiffs request payment for the costs they incurred in this litigation. In addition to costs such as filing fees, service fees, court reporters, witness fees and copying fees which 28 U.S.C. § 1920 mandates, plaintiffs also request payment for travel, meals, telephone, postage and other charges. Defendants counter that the latter costs are not taxable under § 1920 and should, therefore, not be awarded. After consideration of these two arguments, the court finds that the costs requested are reasonable, with the exceptions noted below.

In *Rank v. Balshy*, 590 F.Supp. 787, 803 (M.D.Pa.1984), the court stated "[w]hen a statute shifts the typical burden of attorney fees and costs, the traditional limitations of 28 U.S.C. § 1920 do not necessarily apply, particularly in civil rights cases." *Id.* (citation omitted). The *Rank* Court, in deciding what costs were permissible looked to the purpose of § 1988, which is to ensure the effective enforcement of the civil rights laws by creating financial feasibility to litigate cases. *Id.* The court further stated that "[t]he factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys." *Id.* (quoting *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1190 (11th Cir.1983)).

Accordingly, the court will order the payment of the costs for all items requested with the following exception. The court will reduce the travel, parking and meals expenditures by one-half since plaintiffs' counsel failed to indicate to whom the various expenses were attributable. Accordingly, the court will award plaintiffs $18,794.59 for the costs of litigating this case.

### G. *Expert Witness Fees*

Plaintiffs request remuneration for the full amount of fees expended on obtaining the testimony of expert witnesses. These fees totaled $26,520 for the services of two experts. Defendants contend that expert witness fees are not allowed under the present law in the Third Circuit. The defendants' argument on this point is correct. In *West Virginia Hospitals, Inc. v. Casey*, 885 F.2d 11, 34–35 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990), the Third Circuit held that the 28 U.S.C. § 1821 limitation of witness fees to thirty dollars ($30) per day applied to attorneys' fees and costs petitions filed pursuant to 42 U.S.C. § 1988 and

**664**

that a district court could not award expert witness fees in excess of the statutorily imposed limits.

■ Since the plaintiffs failed to include any summary of the number of days each expert witness served, the court cannot calculate the amount of expert witness fees appropriate for this case. Plaintiffs, in order to receive such witness fees, must file affidavits indicating the number of days plaintiffs employed each expert witness.

### H. *Attorneys' Fees for the Fee Application*

■ Plaintiffs request attorneys' fees for the preparation of the fee application. The fees are broken down in the chart below:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Michael G. Trachtman | 14.0 | $150 | $2,100.00 |
| Jonathan K. Hollin | 2.2 | 125 | 275.00 |
| Ethan N. Haberstadt | 57.7 | 90 | 5,193.00 |
| Mark L. Freed | .4 | 60 | 24.00 |
| William D. Longo | .4 | 60 | 24.00 |
| Suzanne S. Detar | .5 | 60 | 30.00 |
| Eileen M. Coyne | .4 | 60 | 24.00 |
| | | Total: | $7,670.00 |

Defendant does not contest this request. However, after, careful and exhaustive review of plaintiffs' Application, all supporting materials, and all affidavits submitted in connection with this application, the court finds that the amount of time, a total of 75.6 hours, that plaintiffs expended in the preparation of this Application is excessive and unreasonable. Accordingly, the court shall reduce by half, to $3,835.00, the attorneys' fees requested by plaintiff for this Fee Application.

### I. *Immediate Payment of the Attorneys' Fees*

■ Plaintiffs seek immediate payment of their attorneys' fees and costs. A plaintiff who has prevailed on the merits of his claim is entitled to prompt payment of the attorneys fee award granted for that success. *See Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (prompt payment of attorneys fees is appropriate even at interlocutory stages of litigation). This case has proceeded to trial and the jury has returned a substantial verdict in favor of plaintiffs. To require plaintiffs to defend their verdict on appeal without any payment of the attorneys' fees and costs to which they are entitled would constitute an undue hardship. Accordingly, the court will order that defendants make prompt payment of the fees and costs mandated by this memorandum.

An appropriate order follows.

### ORDER

AND NOW, this 10th day of January, 1991, after consideration of Plaintiffs' Application For Attorneys' Fees Pursuant To 42 U.S.C. § 1988, and the response thereto, and in accordance with the foregoing memorandum opinion, it is hereby Ordered that said motion is GRANTED. It is further Ordered that defendant, City of Philadelphia, PAY plaintiffs the sum of $640,625.44 in attorneys' fees and costs within 30 days from the date of this Order. It is further Ordered that defendant PAY plaintiffs $3,835.00 in attorneys' fees and costs as prevailing parties in connection with Plaintiffs' Application for Attorneys' Fees. Plaintiffs are granted leave to file a supplemental motion for expert witness fees including affidavits indicating the number of days each expert served.

AND IT IS SO ORDERED.